IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 16, 2011 Session[1]

# KAREN JOHNSON

v.

# BEVERLY NUNIS AND FARMER'S INSURANCE EXCHANGE

Appeal from the Circuit Court of Shelby County
No. CT-004080-08     Gina Higgins, Judge

No. W2011-01493-COA-R3-CV - Filed April 27, 2012

This appeal involves remittitur of a jury verdict.  The defendant driver caused a vehicular accident that resulted in substantial personal injuries to the plaintiff.  At trial, several witnesses testified to the amount of the plaintiff's economic damages as well as the non-economic impact of her injuries.  After a trial, the jury returned a special verdict with awards for various categories of economic and non-economic damages.  The trial court denied the defendant insurance company's motion for a new trial but suggested an overall remittitur as to the total verdict.  The plaintiff accepted the remittitur under protest and filed this appeal. We affirm the denial of a new trial, reverse the suggestion of remittitur, and reinstate the original jury verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS,  P. J. W.S., and J. STEVEN STAFFORD, J. joined.

Martin W. Zummach, Germantown, Tennessee for Plaintiff/Appellant, Karen Johnson

Christopher M. Myatt, Memphis, Tennessee for Defendant/Appellee, Beverly Nunis

Robert L. Gatewood, Jr., Memphis, Tennessee for Appellee/Cross-Appellant, Farmer's Insurance Exchange

---

[1]The appeal in this case was held in abeyance while the case was on remand to the trial court to decide a pending motion for new trial, as discussed in the Opinion.

# OPINION

## FACTS AND PROCEEDINGS BELOW

On January 11, 2008, about 7:45 a.m., Appellant Karen Johnson ("Johnson") was driving to work for her job as a comptroller for the Southaven Pontiac GMC car dealership. While Johnson was driving south on Riverdale, Rodney Mitchell ("Mitchell") and Defendant/Appellee Beverly Nunis ("Nunis") were traveling north on the same street. While Mitchell's truck was stopped for a red light, the vehicle driven by Nunis violently struck Mitchell's vehicle from the rear. The force sent Mitchell's truck across several lanes of traffic to hit Johnson's SUV. Johnson's vehicle was propelled off the roadway, through storm fencing, and into a ten foot deep concrete culvert. Johnson sustained severe injuries in the crash and was hospitalized. After discharge, Johnson received months of continuing treatment and physical therapy. She eventually lost her job at the car dealership.

On October 8, 2008, Johnson filed the instant lawsuit against Mitchell,[2] Nunis, and Nunis's insurance provider, Appellee Farmer's Insurance Exchange ("Farmer's"), seeking compensatory damages for the injuries she sustained as a result of the crash. Both Nunis and Farmer's filed answers denying liability. Discovery ensued.

In November 2010, Johnson and Nunis entered into a Stipulation ("Stipulation"). They stipulated that the $13,439.22 in medical bills incurred by Johnson were caused by the accident, were medically necessary, and were reasonable and customary in the Memphis community.

The jury trial in this matter began on November 29, 2010 and continued through December 1, 2010. Prior to trial, counsel for Farmer's made an oral motion "that there be no reference to insurance provider or insurance carrier in this matter." This motion was granted. Counsel for Farmer's participated in the trial; in the lawyers' opening statements, he told the jury only that he represented "the defendant." Farmer's was not mentioned during the trial.

At trial, several witnesses testified to Johnson's damages. They included Johnson, Johnson's mother, a former co-worker, and Johnson's treating physician.

Johnson testified that, after the crash, she was taken by ambulance to the Regional Medical Center. For several days after she was released, she experienced dizziness, headaches, confusion, and soreness, and was unable to walk. After the accident, Johnson went to see

---

[2]Upon the motion of Johnson, Mitchell was subsequently dismissed from this lawsuit with prejudice pursuant to a consent order reached between the parties on November 29, 2010.

her family practitioner, Marlah Mardis, M.D. ("Dr. Mardis"), several times. Dr. Mardis prescribed several medications for Johnson's pain, instructed Johnson to work only half days, and prescribed weekly physical therapy. Despite this, Johnson continued to have back and neck pain as well as numbness in her left hand. Johnson also had a constant ringing in her ears and continuous pain in her left side and lower back. The pain medication she took for these conditions made her groggy. Despite continued physical therapy at home, Johnson said that her pain had stayed the same, and she just learned to live with it.

Johnson testified about the effect the crash had on her career. Johnson worked for at least sixteen years for Southaven Pontiac GMC car dealership, the last ten years as a comptroller for the dealership. At the time of the accident, she was earning approximately $65,000 per year. Johnson's job included substantial filing, lifting, moving, and walking the 4.4 acre lot to inventory the cars. Prior to the accident, Johnson had no trouble walking the lot, but after the accident she was forced to stop halfway through the task and ask a co-worker to finish it. She said that, when the owner of the dealership learned that a co-worker had been helping Johnson with her duties, he began giving Johnson "dirty looks" and would not talk to her the rest of the day. Johnson testified that her lost work time after the accident resulted in $7,000 in lost wages.

In April 2010, Johnson testified, the owner of the car dealership finally terminated her employment. Over a hearsay objection by counsel for Farmer's, Johnson testified that the dealership owner told her that her "work performance wasn't like it was and that it hadn't been for a while." Johnson said that the termination of her employment surprised her because she had been an excellent employee.

Prior to the accident, Johnson testified, she engaged in outside activities for additional income, such as a catering business. These brought in approximately $100-$200.[3] After the accident, Johnson could not continue these activities and lost that additional income. After Johnson's employment at the car dealership ended, she was out of work for approximately four months. She eventually got a job as a manager-in-training at a payday advance center, with an annual salary of $22,100, without benefits.

A former dealership co-worker of Johnson's, Bridget Calhoun, testified about the impact of the accident on Johnson's career. Calhoun worked with Johnson at the dealership for sixteen years. She described Johnson as "always working." After the crash, Calhoun said, it was "always a problem" for the dealership owner when Johnson had to leave work to go to physical therapy or a doctor appointment. Over another hearsay objection by counsel for Farmer's, Calhoun explained that when Johnson left for physical therapy, the dealership

---

[3]The record does not specify how often these outside activities brought in additional income.

owner would make Calhoun call Johnson to come back, claiming that Johnson needed to sign some papers or go to the bank immediately, things supposedly more important than Johnson's medical treatment.

Calhoun testified about Johnson's overall decline after the accident. Prior to the crash, Calhoun said, Johnson's activities outside of work included a catering business, a dealership softball team, walking, and some matchmaking as well. Before the accident, Calhoun said, Johnson was "an upbeat person, enthusiastic about everything," and she "[a]lways had a smile on her face . . . ." After the accident, Johnson could no longer engage in the outside activities she enjoyed. In addition, there were changes in Johnson's personality after the accident; she gained over fifty pounds, she was depressed, and she was in a lot of pain. Calhoun said, "you could tell on a day-to-day basis that this wasn't the same person."

Johnson's mother corroborated Calhoun's testimony about her daughter's decline after the accident. Johnson's mother testified that she used to call her daughter "a road runner" because Johnson "loved to go places, go shopping . . . and just different places and different activities that she enjoyed." After the accident, she said, Johnson no longer engaged in such activities.

Johnson's family practitioner, Dr. Mardis, testified that the $13,439.22 in medical services that Johnson incurred for her injuries was reasonable and necessary. Dr. Mardis testified that Johnson is "more likely than not" going to have "flare ups" and future pain from the injuries sustained in the accident, specifically neuralgia in her forearm. Dr. Mardis said that there was really nothing more that Johnson could do to avoid this future pain.

Neither Nunis nor Farmer's put on any evidence as to Johnson's damages, but instead relied on cross-examining Johnson's witnesses. This concluded the evidence presented on Johnson's economic and non-economic damages.

At the conclusion of the trial, the jury returned a verdict in favor of Johnson, finding that Nunis was 90% at fault for the accident and Mitchell was 10% at fault. The jury awarded Johnson a total of $116,493.22 in compensatory damages, categorized as follows:

Non-Economic Damages:
    a. Pain and Suffering - Past: $20,000
    b. Pain and Suffering - Future: $10,000
    c. Permanent Impairment: $10,000
    d. Loss of the Ability to Enjoy Life:
        Past: $15,000
        Future: $0

Economic Damages:
      e. Medical Care - Past: $13,493.22
      f. Medical Care- Future: $3,000
      g. Loss of earning capacity
            Past: $10,000
            Future: $35,000

On December 6, 2010, the trial court entered an order approving the jury verdict in the amount of $116,493.22. As Nunis was found to be 90% at fault, judgment was entered against Nunis for $104,843.90.

On January 5, 2011, Farmer's filed a motion pursuant to Rule 59 of the Tennessee Rules of Civil Procedure for a new trial or, in the alternative, for remittitur. Farmer's argued that the jury verdict was contrary to the law and the evidence, particularly the award of $10,000 for permanent impairment. Farmer's also asserted that it was entitled to a new trial because the trial court erred in overruling its objections to hearsay evidence. Farmer's contended that the objectionable evidence was the basis for the jury's award of $10,000 in past lost wages and $35,000 in future lost wages. Farmer's also claimed that the trial court erred in presenting the Stipulation between Nunis and Johnson to the jury, asserting that Farmer's had not been aware of the Stipulation until a few days before trial and that it had not agreed to its terms.

On April 25, 2011, the trial court sent counsel for the parties a letter ruling on the motion of Farmer's. The letter ruling suggested a substantial remittitur of the jury's verdict:

> Having presided over the trial, heard all of the evidence, read and listened to the allegations of errors in the trial, this Court is of the opinion that the judgment in favor of the Plaintiff is excessive, is not supported by the proof, and should be reduced. Accordingly, the court suggests a remittitur to Plaintiff in the amount of $45,000.00 which thereby, reduces the award from $116,493.22 to $71,493.22. Said award is further reduced by the 10% fault allocated to Rodney Mitchell ($7,149.32), resulting in a final award of $64,363.90 to Plaintiff.

Thus, the trial court suggested a remittitur of $45,000 of the overall amount awarded by the jury.

On April 28, 2011, the trial court entered a written order on the motion filed by Farmer's, to the same effect as its letter ruling. The order first acknowledged that Farmer's asserted numerous errors as justification for a new trial or for remittitur. It then stated: "After careful review and consideration, this honorable court determined that the judgment in favor of the

Plaintiff, Karen Johnson, was excessive, was not supported by the proof, and should, therefore, be reduced." As with the letter ruling, the order suggested a remittitur of $45,000. Johnson's total award was thus reduced to $71,493.22, with Farmer's and Nunis liable for $64,343.90. Johnson accepted the suggestion of remittitur under protest, pursuant to Tennessee Code Annotated § 20-10-102(a).

An order on the suggestion of remittitur and Johnson's acceptance under protest was entered on June 13, 2011. It was certified as a final judgment pursuant to Rule 54 of the Tennessee Rules of Civil Procedure. Although the trial court had ruled on the request for remittitur, it expressly reserved its ruling on the request in the alternative for a new trial. Johnson filed a notice of appeal on June 30, 2011. Farmer's also filed a notice of appeal on July 8, 2011.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Johnson argues that the trial court erred in suggesting a remittitur of the jury verdict in the amount of $45,000.

In response, Farmer's argues that the trial court did not err in suggesting such a remittitur. Although the trial court did not initially decide the motion by Farmer's for a new trial, Farmer's argues that this Court should decide that it is entitled to a new trial because the jury's verdict was contrary to the weight of the evidence, outside the range of reasonableness, and resulted from passion, prejudice or unaccountable caprice.

Farmer's further contends that it should be granted a new trial because the trial court erroneously presented to the jury a Stipulation by only Johnson and Nunis. It also asserts that the trial court abused its discretion in overruling the hearsay objections by counsel for Farmer's and allowing testimony concerning statements by Johnson's former employer. Farmer's argues that this hearsay evidence was prejudicial to both Farmer's and Nunis; it notes that the jury awarded Johnson $10,000 in past lost wages and $35,000 in future lost wages, purportedly with no evidence of these damages other than the objectionable hearsay testimony. If it is not granted a new trial, Farmer's asserts, the trial court's suggestion of remittitur in the amount of $45,000 should be affirmed.

On appeal, Nunis argues that the trial court's suggestion of remittitur should be affirmed because there was no proof to support the award for permanent impairment or future loss of earning capacity.

This Court is to review the action of the trial court in suggesting a remittitur using the standard of review provided for in Rule 13(d) of the Tennessee Rules of Appellate Procedure, applicable to decisions of the trial court sitting without a jury. Tenn. Code Ann.

§ 20-10-102(b) (2009).  Thus we review the trial court's suggestion of remittitur *de novo,* accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).

A trial court's decisions regarding the admission of evidence such as the alleged hearsay testimony and the Stipulation are discretionary.  Therefore, this Court reviews such decisions under an abuse of discretion standard.  ***Davis v. McGuigan***, 325 S.W.3d 149, 168 (Tenn. 2010).  The trial court's decision to admit or exclude evidence will be overturned on appeal "only when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.' " ***Mercer v. Vanderbilt Univ. Inc.***, 134 S.W.3d. 121, 131 (Tenn. 2004) (quoting ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)).

## ANALYSIS

### *Rule 54.02 Certification*

As a threshold matter, we must address the procedural posture of this case when it was appealed.  After trial, Farmer's filed a motion pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, seeking a new trial or, in the alternative, remittitur of the jury verdict. The trial court entered an order on the request for remittitur, suggesting a remittitur of $45,000.  However, the trial court expressly reserved its ruling on the request for a new trial filed by Farmer's.  The trial court's written order acknowledging that Johnson accepted the suggestion of remittitur under protest, was made final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.  This left Johnson little choice but to file an immediate appeal, despite the fact that the request for a new trial remained unresolved.

Once the procedural posture of the case was ascertained by this Court, the appellate court entered an order finding that the trial court's order on remittitur was improvidently certified as final under Rule 54.02.  Normally, of course, parties have a right of appeal only as to orders and judgments that are final under Rule 3 of the Tennessee Rules of Appellate procedure, *i.e.* orders that resolve all of the claims of all of the parties, leaving "nothing else for the trial court to do." Tenn. R. App. P. 3 (2011), ***In re Estate of Henderson***, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting ***State, ex rel. McAllister v. Goode***, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)).  Tenn. R. Civ. P. 54.02 is an exception to Rule 3 that permits the trial court, without permission from the appellate court, to certify an order as final and appealable, even if parts of the overall litigation remain pending in the trial court.  However, under the express language in Rule 54.02, such certification may be done only in limited circumstances.  Rule 54.02 states that a trial court may certify as final an order that may direct the entry of a final judgment "as to one or more but fewer than all of the claims or

parties" that is, certify an order that resolves an entire claim as to all parties or resolves all claims as to a particular party.[4] ***Christus Gardens, Inc. v. Baker, Donelson, Bearman, et al.***, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at *4-5, Tenn. App. 2008 LEXIS 480, at *11-14 (Tenn. Ct. App. Aug. 15, 2008); ***Shofner v. Shofner***, 181 S.W.3d 703, 713 (Tenn. Ct. App. 2004).

The order certified as final in this case, of course, did neither. Because the trial court did not decide the request by Farmer's for a new trial, the order in fact left all claims against all parties unresolved. Thus, the trial court's order granting the request for remittitur, but reserving the issue of a new trial, was not a proper subject for certification under Rule 54.02.[5]

Thus, this Court determined that the trial court improvidently certified the order suggesting remittitur as final under Rule 54.02, while reserving its ruling on a new trial. However, instead of dismissing the appeal on this basis, the appellate court entered an order holding the appeal in abeyance and remanding the case to the trial court for the express purpose of allowing the trial court to decide the motion for a new trial.

---

[4]54.02. Multiple Claims for Relief.

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02 (2011).

[5]Parenthetically, in some instances, the trial court may choose to grant the parties permission to appeal an interlocutory order pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Unlike Tenn. R. Civ. P. 54.02, under Rule 9, the parties must also obtain the permission of the appellate court for the appeal. However, it is unlikely that an appellate court would grant permission for an interlocutory appeal of an order such as the order being appealed in this case. If, for example, the appellate court were to reverse the trial court's suggestion of remittitur, the decision of the appellate court could be rendered ineffective if, on remand, the trial court then decided to grant the request for a new trial. So Rule 9 would also likely not be a vehicle for an interlocutory appeal of a suggestion of remittitur if the motion for a new trial remained pending.

On remand, the trial court entered an order denying the motion for a new trial filed by Farmer's. This made the matter final and appealable under Rule 3 of the Tennessee Rules of Appellate Procedure. This Court then reinstated the appeal.

We now address the substantive issues raised by the parties on appeal.

### *Motion for New Trial*

In the original procedural posture of this case, Farmer's argued that it was entitled to a new trial for a variety of reasons, even though the motion for a new trial was still pending in the trial court. It would, of course, be improper for this Court to address these arguments by Farmer's when the same issues remained pending in the trial court. However, now that the trial court has entered an order denying the motion for a new trial, we may address the issues raised by Farmer's.

Farmer's argues first that the trial court erred in presenting to the jury the Stipulation executed by Johnson and Nunis. The Stipulation reflected the agreement by Johnson and Nunis that the medical treatment received by Johnson was reasonable and necessary and related to the accident. Farmer's notes that it was not a party to the Stipulation and claims that it was unaware of the Stipulation until three days before the trial.

Farmer's contends that because it did not receive timely notice of the Stipulation, the reading of the Stipulation to the jury, coupled with the jury instruction on the Stipulation, amounted to surprise testimony that adversely impacted its ability to present a defense to Johnson's medical treatment or argue that the treatment was unreasonable, unnecessary, or unrelated to the accident. Farmer's contends that this denied it due process and basic fairness. Farmer's points out that it had separate and distinct interests from Nunis. It cites, as persuasive authority, an Arizona Supreme Court case, *United Services Auto. Assoc. v. Morris*, 741 P.2d 246 (Ariz. 1987) suggesting that an insurer should not be bound by factual stipulations made by the insured if the insurer had no knowledge of the stipulation.

After carefully considering these arguments and the cited cases by Farmer's, we find these arguments are without merit. At oral argument, counsel for Farmer's conceded that, even though it learned of the Stipulation three days before the trial was to commence, at no time did it ask the trial court for a continuance. Therefore, Farmer's waived any objection to the Stipulation based on its claimed lack of notice. Farmer's points out that it has separate and distinct interests from those of the named defendant, Nunis, and disputes the trial court's description of the Stipulation as being between "the parties," arguing that its separate interests were thereby undermined. We observe, however, that counsel for Farmer's in fact introduced himself to the jury as an attorney for "the defendant," which the jury could only

have understood as a reference to Nunis. Thus, Farmer's clearly elected to defend in Nunis's name.

Most importantly, Farmer's can point to no way in which it was prejudiced by the admission of the Stipulation. The information contained within the Stipulation, specifically the amount of Johnson's medical expenses and the reasonableness of those expenses, was identical to Dr. Mardis's testimony. Farmer's was permitted to cross-examine Dr. Mardis on these topics. Farmer's in fact points to no proof that it was prevented, by virtue of the Stipulation, from presenting to the jury. Farmer's is not entitled to a new trial if it is unable to demonstrate prejudice resulting from the presentation of the Stipulation to the jury. *Blackburn v. Murphy*, 737 S.W.2d 529, 533 (Tenn. 1987) ("[T]he admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence. . . or where the fact is undisputed.").

Farmer's also argues that the trial court abused its discretion by permitting testimony by Johnson and Johnson's co-worker, Calhoun, as to the behavior of the owner of the car dealership toward Johnson when she had to leave work for medical treatment for her injuries or when Johnson got assistance on the job from co-workers, and the reason given by the dealership owner for terminating Johnson's employment. After reviewing the testimony in the record, the objections made, and the trial court's ruling, we find that much of the testimony to which Farmer's objects was behavior by the dealership owner, and was not hearsay. As to any testimony about the reason for termination stated by the dealership owner, any error by the trial court would be harmless error. Johnson presented undisputed testimony that she had been employed by the car dealership for many years, and her job performance prior to the crash was good. Testimony by numerous witnesses supported Johnson's contention that, after the crash, her injuries left her unable to fully perform her job duties, she often had to rely on co-workers for assistance, she often had to leave work for medical treatment or physical therapy, and the dealership owner appeared displeased with Johnson because of this. Even without the testimony on the dealership owner's statements, the jury could reasonably infer that Johnson's employment was terminated for reasons related to the injuries she sustained in the crash. Under Rule 36(b) of the Tennessee Rules of Appellate Procedure, an error that is harmless does not require reversal of a final judgment. *Blackburn*, 737 S.W.2d at 533. Rule 36 states that a final judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b) (2011). Thus considering the record as a whole, we affirm the trial court's denial of the motion by Farmer's for a new trial based on the alleged hearsay.

Farmer's also contends that the trial court erred in denying its motion for a new trial because, without the alleged hearsay, there was no evidence to support the jury's award for past and

future lost wages. As outlined above, even without the alleged hearsay, there was ample evidence for the jury to find that Johnson lost her job at the car dealership as a result of the injuries she suffered in the accident. Johnson testified that, even while employed at the dealership, she lost wages due to absences for medical treatment and physical therapy, and was unable to engage in outside income-producing activities such as catering. After her employment at the dealership ended, Johnson became employed in a job that pays some $40,000 per year less than her prior position with the dealership. Thus, there is ample evidence that Johnson lost past compensation on account of the injuries from the crash, and that she will lose compensation in the future as well. This argument is without merit.

For all of these reasons, we affirm the trial court's denial of the motion for a new trial.

### *Remittitur*

Johnson argues on appeal that the trial court erred in suggesting a remittitur in the amount of $45,000, reducing the jury's total $116,493.22 verdict to $71,493.22. Citing the seminal case of ***Smith v. Shelton***, 569 S.W.2d 421 (Tenn. 1978), Johnson emphasizes the primary role of the jury in assessing damages. ***Id.*** at 427 "It is the exclusive province of the jury to assess damages within the range of reasonableness established by the credible proof . . . ."). She points out that neither Nunis nor Farmer's put on any countervailing proof on damages, and argues that the evidence at trial supports the damage amounts awarded by the jury in all categories. Johnson notes that the trial judge did not indicate which damage award on the jury's special verdict form was excessive or unsupported by the evidence, and contends that the suggested remittitur destroys the jury's verdict. Johnson asks this Court to restore the jury's verdict.

Nunis contends that the trial court's suggested remittitur should be affirmed, arguing that there was no evidence to support the award for permanent impairment and the only evidence supporting the award for future lost wages is the allegedly inadmissible hearsay discussed above.

Farmer's likewise argues that the trial court did not err in suggesting a remittitur of $45,000, because the only evidence supporting the jury's awards for past and future lost wages is the purportedly inadmissible hearsay relied on by Farmer's in its motion for a new trial. Farmer's contends that the jury's verdict is contrary to the weight of the evidence and outside the range of reasonableness. Noting that the appellate court is also authorized by statute to suggest a remittitur, Farmer's contends that the total damage award as adjusted by the trial court is still excessive and asks this Court to suggest a further remittitur.

We consider first the request by Farmer's that this Court suggest a further remittitur. While an appellate court is authorized to suggest a remittitur, its authority to do so "is naturally more circumscribed than that possessed by the trial courts." ***Coffee v. Fayette Tubular Products***, 929 S.W.2d 326, 331 (Tenn. 1996). Unlike the trial court, the appellate court may suggest a remittitur in the first instance only if there is *no* material evidence in the record to support the jury's damage award. ***Id.*** at 331 n.2. After reviewing the evidence in this record, we find there is material evidence to support the jury's damage award, and so decline the request by Farmer's that we suggest a further remittitur.

We now review the trial court's suggestion of an overall $45,000 remittitur in this case. As noted by Johnson, Tennessee caselaw emphasizes the primacy of the jury in determining the damages to be awarded to a claimant. ***See Foster v. Amcon Int'l***, 621 S.W.2d 142, 147 (Tenn. 1981); ***Smith***, 569 S.W.2d at 426-27; ***Oglesby v. Riggins***, No. W2010-01470-COA-R3-CV, 2011 WL 915583, at *3 (Tenn. Ct. App. Mar. 17, 2011); ***Long v. Mattingly***, 797 S.W.2d 889, 895 (Tenn. Ct. App. 1990). However, if the trial court finds that the jury's verdict is excessive, it has the "statutory prerogative" to "adjust damage awards to accomplish justice between the parties and to avoid the time and expense of a new trial." ***Long***, 797 S.W.2d at 896; *see also **Oglesby***, 2011 WL 915583, at *3; Tenn. Code Ann. §§ 20-10-101, -102 (2009). As outlined in ***Oglesby***:

> If the party in whose favor the verdict has been rendered refuses to make the remittitur, the trial court must grant a new trial. If, however, the party accepts the remittitur under protest, the party may then appeal the trial court's finding that the verdict was excessive.

***Oglesby***, 2011 WL 915583, at *3 (quoting ***Grandstaff v. Hawks***, 36 S.W.3d 482, 499 (Tenn. Ct. App. 2000) (internal citations omitted). ***See*** Tenn. Code Ann. § 20-10-102(a). In the case at bar, Johnson accepted the trial court's suggestion of remittitur under protest, and then appealed to this Court.

On appeal, the role of this Court is "to determine whether the trial court's adjustments were justified, giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror." ***Long***, 797 S.W.2d at 896; ***Burlison v. Rose,*** 701 S.W.2d 609, 611 (Tenn. 1985); *see also **Oglesby***, 2011 WL 915583, at *4. The appellate courts employ a "three-step review" of the trial court's suggestion of remittitur:

> First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. Second, we examine the amount of the suggested adjustment since adjustments that

"totally destroy" the jury's verdict are impermissible. Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment.

*Long,* 797 S.W.2d at 896; *see Oglesby,* 2011 WL 915583, at *4. We are also mindful that "[t]he right to revise . . . the amount of the verdict by the process of suggesting a *remittitur* is a delicate one and one that a court should be slow to adopt . . . ." *Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 387 (Tenn. Ct. App. 2006) (quoting *Jenkins v. Commodore Corp. Southern*, 584 S.W.2d 773, 778 (Tenn. 1979)) (italics in original).

To recap, the jury in this case returned a verdict form with itemized damage verdicts in the following amounts:

> Non-Economic Damages:
>> a. Pain and Suffering - Past: $20,000
>> b. Pain and Suffering - Future: $10,000
>> c. Permanent Impairment: $10,000
>> d. Loss of the Ability to Enjoy Life:
>>> Past: $15,000
>>> Future: $0
> Economic Damages:
>> e. Medical Care - Past: $13,493.22
>> f. Medical Care- Future: $3,000
>> g. Loss of earning capacity
>>> Past: $10,000
>>> Future: $35,000

These itemized damage amounts came to a total award of $116,493.22. This Court has observed that "[r]eporting a verdict in this matter [with an itemized verdict form] . . . actually facilitates the trial court's ability to perform its role as the thirteenth juror, as well as the appellate court's ability to review the verdict for consistency and conformance with the evidence." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 714 (Tenn. Ct. App. 1999). Thus, where there is an itemized verdict form, remittitur should be suggested as to particular itemized verdict amounts, because the jury has assigned "a separate monetary loss for each type of damages requested" and the proof as to each type of damages must be considered separately. *Id.* at 715, 718-19; *Riley v. Orr*, No. M2009-01215-COA-R3-CV, 2010 WL 2350475, at *7-10 (Tenn. Ct. App. June 11, 2010).

Under the "three-step review" outlined above, we look first at "the trial court's motives for reducing [the] verdict and whether those motives are supported by the record." *Oglesby,*

2011 WL 915583, at *5. Our ability to do so in this case is confounded by the manner in which the trial court suggested the remittitur. First, the trial court suggested an overall $45,000 remittitur of the total jury verdict, rather than suggesting a remittitur as to specific itemized damage awards. Second, both the letter ruling and the written order on the suggestion of remittitur stated only the trial court's conclusion that "the judgment in favor of [Johnson] is excessive, is not supported by the proof, and should be reduced."[6] No explanation for this conclusion was given. Though we are charged on appeal with the responsibility to "examine the reasons for the trial court's actions," we are left perplexed as to how this can be done in this case. *Long*, 797 S.W.2d at 896. *See Johnson v. Sweat*, 1985 Tenn. App. LEXIS 2938, at *6 (Tenn. Ct. App. June 4, 1985) (no case number in original) (case not found on Westlaw) (reinstating a jury's award of compensatory damages in part because the trial court gave no reason for remittitur other than stating that the award was excessive). We soldier on.

Next, we are to determine whether the trial court's suggested remittitur totally destroys the jury's verdict. The trial court's suggested remittitur amounts to a 43% reduction in the jury's overall verdict, a substantial reduction indeed. Given the proof at trial on Johnson's damages, this presents a close question. However, considering the record in its entirety, we conclude that the suggested remittitur does not totally destroy the jury's verdict. *See Webb v. Canada*, No. E2006-01701-COA-R3-CV, 2007 WL 1519536, at *4 (Tenn. Ct. App. May 25, 2007) (citing cases in which remittiturs ranging from 40% to 59% were found to not destroy jury verdict).

Finally, we must review the evidence in the record to determine whether it preponderates against the trial court's adjustment of the jury verdict. As noted above, the fact that the trial court suggested a remittitur as to the overall jury verdict instead of suggesting remittitur of particular itemized damage verdicts makes discharging this responsibility challenging, as we have no idea which damage awards the trial court found excessive or unsupported by the evidence. We do not know whether the trial court disagreed with some of the jury's credibility determinations, whether it perceived an absence of evidence on one or more of the itemized awards, or had some other reason for its suggested remittitur. While we are to defer to the trial court in its role as thirteenth juror, the absence of any specifics gives us little to which we may defer.

Farmer's argues energetically that we should surmise that the trial court based its suggestion of remittitur on alleged lack of evidence of permanent impairment or past or future lost

---

[6]The trial court's denial of the motion for a new trial, along with the suggestion of remittitur, indicates that the trial court did not disagree with the jury's finding on liability, only the amount of the damages. *Myers v. Myers*, No. E2004-02135-COA-R3-CV, 2005 WL 1521952, at *3 (Tenn. Ct. App. June 27, 2005).

wages. We decline to guess at the trial court's reasons for its decision. Instead, we will review the evidence as to each of the itemized damage verdicts, giving full deference to the jury's credibility determinations, since the jury's credibility assessment is the only one we have.

As to Johnson's economic damages, the jury awarded Johnson $13,493.22 for past medical care and $3,000 for future medical care. The award for past medical care is clearly supported by not only the Stipulation but also Dr. Mardis's testimony that the medical expenses incurred by Johnson were necessitated by her injuries and were reasonable and customary in Shelby County. Johnson testified that she continues to require physical therapy, and continues to need prescription pain medication for her injuries. Dr. Mardis indicated in her testimony that she expects Johnson to continue to have pain and "flare ups." The jury's award of $3,000 for future medical care is supported by the preponderance of the evidence in the record.

The other itemized economic damage awards, $10,000 for past lost earning capacity or wages and $35,000 for future lost earning capacity or wages, is discussed above. We have rejected the argument by Farmer's that the only evidence supporting both awards is the allegedly inadmissible hearsay testimony on the car dealership owner's statements about the reason he terminated Johnson's employment. Even without this testimony, there is ample evidence that Johnson lost her job with the car dealership as a result of the injuries she received in the crash caused by Nunis. Johnson testified as to the amount she earned in her job with the dealership, her period of unemployment, her lost wages and other income, and her greatly reduced compensation in her new job with the payday advance center. Considering the evidence on these items of economic damages, we find that it preponderates in favor of the jury's award and against any remittitur.

We consider now the jury's awards for non-economic damages. In doing so, we are admonished to remember that "the determination of such non-pecuniary losses as pain and suffering damages involves a subjective element not present in the determination of ordinary facts. The jury trial guarantee requires that the subjective element involved be that of the community and not of judges." *Smartt v. NHC Healthcare/McMinnville, LLC*, No. M2007-02026-COA-R3-CV, 2009 WL 482475, at *21 (Tenn. Ct. App. Mar. 10, 2011) (quoting *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 211 n.34 (Tenn. Ct. App. 2008)).

In this case, the jury awarded Johnson $20,000 for past pain and suffering and $10,000 for future pain and suffering. Johnson gave substantial testimony about her pain and discomfort in the aftermath of the crash, the necessity of taking strong pain medications that left her groggy, and her ongoing physical therapy. Her testimony was corroborated by the testimony of Dr. Mardis about the significant medical care needed to treat Johnson's injuries. At trial,

Johnson testified that she continued to have pain from her injuries, again corroborated by Dr. Mardis's testimony that Johnson would likely continue to have "flare-ups" and enough pain to require medication. The jury clearly credited this testimony. We find that the evidence preponderates in favor of the jury's award and against any remittitur.

The jury also awarded Johnson $15,000 for past loss of ability to enjoy life. This is fully supported by the testimony of Johnson, Johnson's mother, and Calhoun that the once-energetic and upbeat Johnson became depressed, gained weight, and was unable to engage in numerous activities she had once enjoyed. The evidence preponderates against any remittitur of this award.

Finally, the jury awarded Johnson $10,000 for permanent impairment. This type of non-economic damages has been described as follows:

> A permanent injury differs from pain and suffering in that it is an injury from which the plaintiff cannot completely recover. It prevents a person from living his or her life in comfort by adding inconvenience or loss of physical vigor . . . . Permanent injury may relate to earning capacity, pain, [or] impairment of physical function.

*Overstreet*, 4 S.W.3d at 715 (citations omitted). Farmer's relies on a note in Johnson's medical record with a physician other than Dr. Mardis, indicating that he had given Johnson a "0% impairment rating." However, there is no reason to think that the jury credited such a statement, and the trial court did not mention it in her order suggesting a remittitur. Moreover, as discussed above, there is ample evidence of other types of permanent impairment. There was substantial evidence that Johnson would continue indefinitely to have pain and a loss of physical vigor as a result of the injuries suffered in the crash precipitated by Nunis. Giving full deference to the jury's credibility assessment, we hold that the evidence preponderates against any remittitur of this award.

Thus, we must conclude that the evidence in the record preponderates against the trial court's suggestion of remittitur in this case. Under Section 20-10-102(b), if we find that

> . . . the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court.

Tenn. Code Ann. § 20-10-102(b). In this case, we affirm the trial court's denial of the motion by Farmer's for a new trial, but hold that the amount of damages awarded by the jury

-16-

should not have been reduced.  Therefore, under the statute, we must reverse the trial court's suggestion of remittitur and reinstate the jury's full verdict, totaling $116,843.90.

## CONCLUSION

The decision of the trial court is affirmed in part and reversed in part as set forth above, and judgment is entered in favor of Appellant Karen Johnson in accordance with the original jury verdict, without any remittitur.  Costs on appeal are assessed one-half against Appellee Beverly Nunis and one-half against Appellee/Cross Appellant Farmer's Insurance Exchange, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE