# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 16, 2013 Session

## LOUIS W. ADAMS v. MEGAN ELIZABETH LEAMON ET AL.

### Appeal from the Circuit Court for Rhea County
### No. 27469    Thomas W. Graham, Judge

---

### No. E2012-01520-COA-R3-CV-FILED-NOVEMBER 25, 2013

---

This is a motor vehicle accident case wherein the jury's verdict resulted in an award of compensatory damages to the plaintiff of $317,000.00. The defendants filed a motion seeking a new trial or, in the alternative, a remittitur of the amount of damages awarded. The trial court granted the remittitur, finding that the damages awarded by the jury were excessive and unsupported by the evidence. The trial court also ruled that if the plaintiff rejected the remittitur, a new trial would be awarded. The plaintiff accepted the remittitur under protest, subsequently filing the instant appeal. We vacate the trial court's judgment and remand this case for a new trial solely on the issue of damages.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Dan Channing Stanley and Eric B. Foust, Knoxville, Tennessee, for the appellant, Louis W. Adams.

Paul Campbell, III, Chattanooga, Tennessee, for the appellees, Megan Elizabeth Leamon and Cynthia Karlette Leamon.

Nathan Evans, Chattanooga, Tennessee, for the appellee, State Farm Mutual Automobile Insurance Company.

## OPINION

### I.  Factual and Procedural Background

On May 21, 2009, the plaintiff, Louis W. Adams, was traveling north on State Route 27 in Rhea County, Tennessee, when a collision occurred between his motorcycle and a vehicle being driven by the defendant, Megan Elizabeth Leamon.  Mr. Adams filed the instant action, alleging that Ms. Leamon's negligent actions caused the collision. Mr. Adams alleged that the vehicle Ms. Leamon was driving was owned by Cynthia Karlette Leamon. Claiming joint and several liability, Mr. Adams sought compensatory damages for injuries he suffered in the collision.

A jury trial was held on February 16 and 17, 2012.  Upon completing its deliberations, the jury apportioned forty percent of the fault for the collision to Mr. Adams and sixty percent of the fault to Megan Leamon.  The jury awarded the following damages:

| | |
|---|---|
| Medical expenses | $ 14,731.00 |
| Pain and suffering - past | $ 10,000.00 |
| Pain and suffering - future | $120,476.00 |
| Loss of enjoyment of life - past | $  2,756.50 |
| Loss of enjoyment of life - future | $156,204.50 |
| Disfigurement | $ 12,833.00 |
| | ========= |
| Total damages | $317,000.00[1] |

The total monetary award was reduced by forty percent based on the respective fault allocation, and judgment was entered in favor Mr. Adams in the amount of $190,000.[2]

The Leamons filed a motion seeking a new trial or a remittitur of the damages awarded by the jury.  The trial court entered an order granting remittitur, finding that "a portion of the damages awarded by the jury [was] excessive."  The court specifically stated that the damages awarded for future pain and suffering and future loss of enjoyment of life "simply are not supported by the evidence."  The court reduced the jury's award in each of the respective damage categories to $25,000.00 as the maximum amount that should have been awarded.  The court accordingly revised the original damages award as follows:

---

[1] The trial court appears to have rounded this number to an even figure.

[2]  The trial court appears to have rounded this number as well.

| | |
|---|---|
| Medical expenses | $ 14,731.00 |
| Pain and suffering - past | $ 10,000.00 |
| Pain and suffering - future | $ 25,000.00 |
| Loss of enjoyment of life - past | $ 2,756.50 |
| Loss of enjoyment of life - future | $ 25,000.00 |
| Disfigurement | $ 12,833.00 |
| | ========= |
| Total damages | $ 90,320.50 |

In establishing a compensatory award, the trial court reduced the revised damages amount commensurate with the jury's allocation of fault and approved a judgment for Mr. Adams in the amount of $54,192.10.[3]  The court ordered that Mr. Adams had thirty days to either accept or reject the remittitur and that if the remittur were rejected, the Leamons would be granted a new trial.  Mr. Adams accepted the remittitur under protest and timely filed this appeal.

## II.  Issue Presented

In this appeal, Mr. Adams presents the issue of whether the trial court erred in suggesting a remittitur of the jury's verdict or, in the alternative, granting the Leamons' motion for a new trial.

## III.  Standard of Review

The trial court's suggestion of remittitur is reviewed *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. Code Ann. § 20-10-102 (2009); Tenn. R. App. P. 13(d).  This Court should "determine whether the trial court's adjustments were justified, giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror." *Johnson v. Nunis*, 383 S.W.3d 122, 134 (Tenn. Ct. App. 2012) (citing *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990)).  As our Supreme Court has often explained:

> The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.

---

[3]  This appears to be a typographical error in the order as the calculated amount should be $54,192.30.

*Foster v. Amcon Intern., Inc.*, 621 S.W.2d 142, 147 (Tenn. 1981) (quoting *Smith v. Shelton*, 569 S.W.2d 421 (Tenn. 1978)). *See, e.g., Reeves v. Catignani*, 7 S.W.2d 38 (Tenn. 1928).

## IV. Remittitur

As this Court has previously recognized:

The issue of damages is primarily for the jury. However, a trial court has the statutory authority to adjust the jury's award when necessary to accomplish justice between the parties and to avoid the expense of a new trial. This prerogative is codified in Tenn. Code Ann. § 20-10-102 (1994), which provides as follows:

> (a) In all jury trials had in civil actions, after the verdict has been rendered and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be reduced and a remittitur is suggested by the trial judge on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur, a new trial will be awarded, the party in whose favor such verdict has been rendered may make such remittitur under protest, and appeal from the action of the trial judge to the court of appeals.

> (b) The court of appeals shall review the action of the trial court suggesting a remittitur using the standard of review provided for in T.R.A.P. 13(d) applicable to decisions of the trial court sitting without a jury. If, in the opinion of the court of appeals, the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court.

*Myers v. Myers*, No. E2004-02135-COA-R3-CV, 2005 WL 1521952 at *2-3 (Tenn. Ct. App. June 27, 2005) (internal citations omitted).

This statute recognizes the trial court's inherent power to suggest a remittitur and encourages the courts to utilize remittitur as a remedy to an excessive jury verdict in order to save the time and expense involved in granting a new trial. *See Thrailkill v. Patterson*, 879 S.W.2d 836, 840 (Tenn. 1994); *Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d

380, 386 (Tenn. Ct. App. 2006). In this case, the trial court suggested a remittitur rather than simply ordering a new trial. Such action indicates that the trial court agreed with the jury's verdict regarding liability and only disagreed with the amount of the jury's compensatory damages award. *See Myers*, 2005 WL 1521952 at *3 (citing *Burlison v. Rose,* 701 S.W.2d 609 (Tenn. 1985)).

For over twenty years, our appellate courts have employed a "three-step review" when determining the propriety of a trial court's suggestion of remittitur:

> First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment.

*Johnson*, 383 S.W.3d at 134 (citing *Long*, 797 S.W.2d at 896). This Court has made clear that "[t]he right to revise even the amount of the verdict by the process of suggesting a remittitur is a delicate one and one that a court should be slow to adopt . . . ." *Palanki*, 215 S.W.3d at 387 (quoting *Jenkins v. Commodore Corp. S.*, 584 S.W.2d 773, 778 (Tenn. 1979)).

Employing the three-step review described above, we focus first upon the expressed reasons for the trial court's action of suggesting a remittitur. In the case at bar, the trial court's only stated reasons for suggesting a remittitur for the two categories of damages reduced were that the jury's award was "excessive" and "not supported by the evidence." As explained in *Johnson*, where the trial court does not give any actual explanation for its action, "[t]hough we are charged on appeal with the responsibility to 'examine the reasons for the trial court's actions,' we are left perplexed as to how this can be done in this case." 383 S.W.3d at 135 (citing *Long*, 797 S.W.2d at 896). Trial courts can assist in this Court's review by providing specific reasons for the suggested remittitur and the evidence upon which the trial court relies. *See, e.g., Glover v. Chambers*, 1988 WL 5681 (Tenn. Ct. App. Jan. 29, 1988).

Here, the trial court did specifically take issue with the jury's awards regarding the particular damage categories of future pain and suffering and future loss of enjoyment of life, which aids in our review. *See Johnson*, 383 S.W.3d at 135. These damage categories are considered non-economic, and this Court is thus cautioned that "the determination of such non-pecuniary losses as pain and suffering damages involves a subjective element not present in the determination of ordinary facts. The jury trial guarantee requires that the subjective element involved be that of the community and not of judges." *Johnson*, 383 S.W.3d at 136

(quoting *Smartt v. NHC Healthcare/McMinnville, LLC*, No. M2007-02026-COA-R3-CV, 2009 WL 482475 at *21 (Tenn. Ct. App. Mar. 10, 2011)). "[D]etermining the amount of these damages is appropriately left to the sound discretion of the jury or the judicial finder-of-fact." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 210-211 (Tenn. Ct. App. 2008).

Further, as our Supreme Court has recently elucidated:

> Damages for pain and suffering are awarded for the physical and mental suffering that accompany an injury. Damages awarded for loss of enjoyment of life are intended to compensate a plaintiff for the impairment of the ability to enjoy the normal pleasures of living. Assigning a compensable, monetary value to non-economic damages can be difficult. The assessment of non-economic damages is not an exact science, nor is there a precise mathematical formula to apply in determining the amount of damages an injured party has incurred. Thus, a plaintiff is generally not required to prove the monetary value of non-economic damages.

*Meals ex rel. Meals v. Ford Motor Co.*, ____ S.W.3d ____, No. W2010-01493-SC-R11-CV, 2013 WL 4673609 at *3 (Tenn. Aug. 30, 2013) (internal citations omitted).

In the case at bar, the evidence demonstrated that Mr. Adams was sixty-seven years old at the time of trial and had enjoyed the hobby of riding motorcycles for most of his life. As a result of the accident, he sustained broken ribs as well as injuries to his neck, shoulder, and hand. Mr. Adams continued working after the accident even though he was suffering pain from his injuries. He was, however, able to adequately perform his duties as a security guard. Although Mr. Adams attended physical therapy for a number of months and experienced improvement, he still suffered from pain and weakness at the time of trial. His treating chiropractor, Dr. Barry Sitkoff, testified that Mr. Adams had likely achieved the highest level of progress possible concerning his injuries. According to Dr. Sitkoff, Mr. Adams would continue to experience some degree of pain as well as permanent limitations to his ability to reach high, climb, and push or lift anything heavy. Specifically, Mr. Adams suffered restricted mobility and tendinosis in his right shoulder, which Dr. Sitkoff opined would be chronic conditions. Another physician associated with Dr. Sitkoff's practice, Dr. Edward Jacobson, examined Mr. Adams during his final office visit on January 27, 2010. He assessed Mr. Adams's right shoulder motion as restricted by thirty percent.

Evidence was presented that Mr. Adams was slightly limited in his ability to perform household tasks and that he presently tired more easily than before the accident. The evidence demonstrated that Mr. Adams was substantially limited in his ability to operate his

motorcycle for long distances. Both Mr. Adams and his wife agreed that his riding for even short trips resulted in pain. Mr. Adams experienced difficulty sleeping due to discomfort in his shoulder and stated that his shoulder felt "frozen." According to his testimony, he also experienced pain and burning in his hand, intermittent headaches, and a significantly decreased energy level. The record contains no evidence of Mr. Adams having any significant physical problems before the accident except for certain unrelated gastrointestinal issues.

The jury awarded Mr. Adams $120,476.00 for future pain and suffering while awarding him an additional $156,204.50 for future loss of enjoyment of life. While this Court would have been better assisted if the trial court had elaborated upon its basis for determining the verdict to be excessive, we agree that the verdict is excessive based upon the evidence before us. Mr. Adams's medical expenses only amounted to $14,731.00, and he never missed work due to his injuries. Mr. Adams did continue to experience pain and weakness from his injuries, but he was able to work and perform most household tasks. His greatest limitation appeared to be that he could no longer fully enjoy his hobby of riding motorcycles. Viewing the evidence regarding Mr. Adams's continuing limitations and pain, we conclude that the evidence does not preponderate against the trial court's determination that the verdict was excessive.

We next examine the suggested remittitur to determine whether it "totally destroys" the jury's verdict. An adjustment that totally destroys the jury's verdict is impermissible and must be vacated or modified. *See Johnson*, 383 S.W.3d at 134; *Myers*, 2005 WL 1521952 at *3. In this case, the trial court reduced the jury's verdict from $317,000.00 to $90,320.50. This is a reduction of approximately 71.5 percent. Our Supreme Court and this Court have been reluctant to establish a numerical standard for reviewing additurs and remittiturs. *See Foster*, 621 S.W.2d at 148 n.9; *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986), overruled on an unrelated ground by *Elliott v. Cobb*, 320 S.W.3d 246 (Tenn. 2010). However, it has generally been recognized that an adjustment of 70 percent or greater is "so large as to destroy the jury's verdict." *Myers*, 2005 WL 1521952 at *5 (remittitur of 70 percent destroyed the verdict). *See also Foster*, 621 S.W.2d at 148 (additur of thirty times the amount of verdict totally destroyed the verdict); *Guess*, 726 S.W.2d at 913 (remittitur of 75 percent destroyed the verdict). Upon our review of the record, we conclude that the reduction in the case at bar was so substantial as to totally destroy the jury's verdict. Having made such determination, we find it unnecessary to employ further review of the propriety of the suggestion of remittitur. We vacate the trial court's suggested remittitur and remand the case for a new trial solely addressing the proper amount of damages, to which the trial court is directed to apply the sixty percent fault allocation attributed to Megan Leamon by the jury.

## V.  Conclusion

The judgment of the trial court is vacated.  This case is hereby remanded for a new trial solely addressing the issue of damages.  Costs on appeal are assessed equally to Appellant, Louis W. Adams, and to the Appellees, Megan Elizabeth Leamon and Cynthia Karlette Leamon.

_____

THOMAS R. FRIERSON, II, JUDGE