CLAY, Circuit Judge.
*353 Defendant Jackson National Life Insurance Company ("Defendant") appeals from the district court's judgment enforcing a jury trial verdict of $350,000 in actual damages, $87,500 in bad faith damages, and $3,000,000 in punitive damages in favor of Plaintiff Tamarin Lindenberg ("Plaintiff"), individually and in her capacity as natural guardian of her minor children, ZTL and SML.[1] Plaintiff cross-appeals, challenging a statutory cap that the district court applied to reduce the award of punitive damages to $700,000. The State of Tennessee ("the State") intervened to defend the statute. For the reasons that follow, we AFFIRM the district court's judgment on all issues raised in Defendant's appeal, REVERSE on the issue raised in Plaintiff's cross-appeal, VACATE the judgment as to punitive damages, and REMAND with instructions for the district court to recalculate the award of punitive damages in accordance with the jury verdict and with this Court's holding that the statutory cap on punitive damages, T.C.A. § 29-39-104, is unconstitutional.
BACKGROUND
This case arises in diversity and concerns a dispute over a $350,000 life insurance policy issued by Defendant to Thomas A. Lindenberg ("Decedent"). Plaintiff Tamarin Lindenberg, the former wife of Decedent, brought suit individually and in her capacity as the natural guardian of her minor children, ZTL and SML, the two children of Plaintiff and Decedent. Plaintiff's claims included breach of contract and both statutory and common law bad faith.
Plaintiff is the primary beneficiary designated in the life insurance policy at issue (the "Policy") and was to receive 100% of the proceeds of the Policy upon Decedent's death. The contingent beneficiaries of the Policy are Decedent's "surviving children equally." (R. 125 at PageID #1854.) During their marriage, Plaintiff and decedent adopted ZTL and SML. Third-Party Defendant Mary Angela Williams ("Williams") is Decedent's daughter from a prior marriage.
Plaintiff and Decedent executed a Marital Dissolution Agreement ("MDA") in 2005, and a divorce decree was issued in 2006. The MDA required that "Wife shall pay for the Life Insurance premium for the Columbus and [Defendant] policies for so long as she is able to do so and still support the parties['] children." (Trial Ex. 10 at 7.) Additionally, the MDA required "Husband at his expense [to] maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries[.]" (Id. at 9.)
Decedent died on January 22, 2013. On February 6, 2013, Plaintiff filed a claim *354 under the Policy for the death benefit. On March 11, 2013, Plaintiff's attorney sent Defendant a letter seeking expedited review of the claim and payment of the death benefit. On March 22, 2013, Defendant responded with a letter requiring further action by Plaintiff, including obtaining "waivers to be signed by the other potential parties" and "court-appointed Guardian(s) for the Estates of the two minor children." (Trial Ex. 23.) Defendant stated that another option would be for Plaintiff to waive her rights to the claim so that Defendant could disburse the proceeds to the minor children. Throughout the month of May 2013, Plaintiff and Defendant were in communication about how to proceed and whether Defendant would interplead the funds with the court. This discussion culminated in Plaintiff filing the instant lawsuit.
With its answer, Defendant included an interpleader complaint that implicated Plaintiff and Williams. Defendant later maintained that its interpleader complaint also implicated the minor children, ZTL and SML.[2] Defendant asserted that it was "not in a position to determine, factually or legally, who is entitled to the Death Benefit," and requested that the district court "determine to whom said benefits should be paid." (R. 4 at 7.)
Plaintiff and Williams jointly moved to dismiss the interpleader complaint. While the motion was pending, and after several months of litigation, the parties filed a joint motion to appoint guardians ad litem for the minor children, which the district court granted. The court then granted the motion to dismiss Defendant's interpleader complaint. The court further ordered Defendant "to disburse life insurance policy benefits to Plaintiff in the amount of $350,000 with interest from January 23, 2013, until the date of payment." (R. 32 at 17.) Plaintiff's claims against Defendant remained.
Defendant filed a motion to dismiss, attacking Plaintiff's claims for punitive damages and bad faith. Through a series of orders, the court granted in part and denied in part Defendant's motion. The court dismissed Plaintiff's claims for common law bad faith. The court allowed Plaintiff to proceed with her claims for common law breach of contract, statutory bad faith, and common law punitive damages predicated on breach of contract.
Following discovery, Defendant filed for summary judgment. The district court denied the motion on all claims Plaintiff asserted in her personal capacity but granted the motion on all claims Plaintiff asserted on behalf of the minor children, ZTL and SML. The court held a weeklong trial. Defendant moved for judgment as a matter of law, which the district court denied. The jury returned a verdict finding that (1) Defendant breached its contract with Plaintiff, resulting in actual damages in the amount of $350,000; (2)
*355 Defendant's refusal to pay was in bad faith, resulting in additional damages in the amount of $87,500; and (3) Defendant's refusal to pay was either intentional, reckless, malicious, or fraudulent. The jury then returned a special verdict awarding Plaintiff punitive damages in the amount of $3,000,000. Defendant renewed its motion for judgment as a matter of law.
Defendant also argued that the district court must apply T.C.A. § 29-39-104, a Tennessee statute that caps punitive damages at two times the amount of compensatory damages awarded or $500,000, whichever is greater. In response, Plaintiff argued that the statutory punitive damages cap violates the Tennessee Constitution. On this basis, Plaintiff filed a motion to certify the issue of the punitive damages cap's constitutionality to the Tennessee Supreme Court. The State of Tennessee then moved to intervene, which the district court permitted. The district court agreed to certify the following two questions to the Tennessee Supreme Court:
1. Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated Section 29-39-104 violate a plaintiff's right to a trial by jury, as guaranteed in Article I, section 6 of the Tennessee Constitution ?
2. Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated Section 29-39-104 represent an impermissible encroachment by the legislature on the powers vested exclusively in the judiciary, thereby violating the separation of powers provisions of the Tennessee Constitution?
(R. 188 at PageID # 4270.) The Tennessee Supreme Court recognized that the "certified questions raise issues of first impression not previously addressed by the appellate courts of Tennessee" but declined to provide an opinion on either of the certified questions. (R. 209-1 at PageID #4916.)
The district court then rejected Defendant's renewed motion for judgment as a matter of law, rejected Plaintiff's constitutional challenge to the punitive damages cap, and entered judgment. In doing so, the court applied the statutory punitive damages cap to reduce Defendant's liability for punitive damages from $3,000,000 to $700,000. The parties filed timely cross-appeals.
DISCUSSION
The parties challenge multiple aspects of the proceedings below. Defendant argues that the district court erred by dismissing its interpleader complaint, failing to dismiss Plaintiff's punitive damages claim, and failing to grant its motion for judgment as a matter of law. Meanwhile, Plaintiff argues that the statutory punitive damages cap, T.C.A. § 29-39-104, violates the Tennessee Constitution. We address Defendant's three arguments before turning to Plaintiff's argument.
A. Dismissal of Defendant's Interpleader Complaint
Defendant first argues that the district court erred when it dismissed Defendant's interpleader complaint. "Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.' " United States v. High Tech. Prods., Inc. , 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1704 (3d ed. 2001) ). Interpleader may be invoked either via Rule 22 of the Federal Rules of Civil Procedure ("rule interpleader") or via 28 U.S.C. § 1335 ("statutory *356 interpleader"). In this case, Defendant attempted to invoke statutory interpleader.
"An interpleader action typically proceeds in two stages." High Tech. Prods. , 497 F.3d at 641. "During the first stage, the court determines whether the stakeholder has properly invoked interpleader ...." Id. In order to properly invoke statutory interpleader, a stakeholder must satisfy the statutory jurisdictional requirements by properly pleading: (1) the existence of actual or potential conflicting claims to a limited fund or property held by the stakeholder, 28 U.S.C. § 1335(a) ; see High Tech. Prods. , 497 F.3d at 642 ; (2) an amount in controversy of at least $500, 28 U.S.C. § 1335(a) ; and (3) minimal diversity among the competing claimants. Id. ; see State Farm Fire & Cas. Co. v. Tashire , 386 U.S. 523, 530-31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). "During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." High Tech Prods. , 497 F.3d at 641.
In this case, Defendant does not challenge the district court's dismissal of its interpleader complaint on the merits. Instead, Defendant asserts that the dismissal must be reversed because the district court improperly relied on extrinsic evidence that "the guardians ad litem of the minor children ha[d] waived any claim the remaining contingent beneficiaries-ZTAL and SML-may have to the benefits." (First Br. at 27.) We need not reach this issue, however, because Defendant did not raise it below. See United States v. Huntington Nat'l Bank , 574 F.3d 329, 332 (6th Cir. 2009) (holding that an argument is preserved if a litigant (1) states "the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue" and (2) provides "some minimal level of argumentation in support of it").
In fact, rather than challenging the waivers as extrinsic evidence, Defendant invited the district court to consider the waivers. Defendant discussed the waivers at length in its opposition to Plaintiff's motion to dismiss, arguing that the waivers were inadequate for substantive reasons:
The Court should likewise reject [Plaintiff]'s contention that [Defendant]'s refusal to distribute the benefits is improper in light of the affidavits and waivers that have been submitted on behalf of the minor children. Though the appointed guardians have submitted their own affidavits and waivers on behalf of the minor children, these "reports" have not been approved by the Court as required by statute. Thus, because [Defendant] is not aware of any authority that would confer the guardians with the inherent and independent ability to lawfully waive the minor children's rights to the benefits, [Defendant] cannot disburse the benefits directly to [Plaintiff] without further approval from this Court. Accordingly, [Defendant] respectfully requests permission to interplead the life insurance benefits and that it be relieved from further liability with respect to this matter because [Defendant] has pled sufficient facts evidencing "two or more" potential adverse claims to the benefits.
(R. 27 at PageID #195-96; see also id. at PageID #204-06.) Furthermore, Defendant specifically asked the district court to dismiss its interpleader complaint if the court found the waivers to be valid:
Alternatively, if the Court finds that the best interests of the minor children have been served and that ... the minor children have lawfully waived any potential claim to the life insurance benefits, *357 [Defendant] requests that the Court exercise its discretion under Tennessee Code Ann. § 34-1-121 to approve [Defendant]'s disbursement of the life insurance proceeds to [Plaintiff] and dismiss its action for interpleader because all of the potentially adverse interests have been waived.
(R. 27 at PageID #196.) We decline to consider Defendant's complaints about an analysis and an outcome that Defendant itself requested. See United States v. Hanna , 661 F.3d 271, 293 (6th Cir. 2011) (holding that an invited error does not warrant reversal).
B. Plaintiff's Punitive Damages Claim
Defendant next argues that the district court should have dismissed Plaintiff's claim for punitive damages in its entirety rather than allowing the claim to proceed to the extent that it was based on breach of contract. This Court reviews de novo the district court's dismissal of a complaint for failure to state a claim. Ass'n of Cleveland Fire Fighters v. City of Cleveland , 502 F.3d 545, 548 (6th Cir. 2007). We must accept the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. Hill v. Blue Cross & Blue Shield of Mich. , 409 F.3d 710, 716 (6th Cir. 2005).
Defendant argues that the district court's denial of its motion to dismiss runs afoul of this Court's decision in Heil Co. v. Evanston Insurance Co. , 690 F.3d 722 (6th Cir. 2012). In Heil , an insurer refused to defend Heil for the first two years of a wrongful death suit before eventually taking over the defense. Id. at 726. Heil then sued for breach of contract due to the failure to pay attorney fees, violation of the bad faith statute, and bad faith failure to settle. Id. A jury found in Heil's favor on the first two of the three claims and awarded punitive damages. Id. This court found clear error, holding that the statutory remedy for bad faith is the "exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy." Id. at 728. Therefore, under Heil , punitive damages-whether predicated on bad faith, breach of contract, or any other type of claim-may not be awarded in a case involving an insurer's bad faith refusal to pay. Id.
If Heil remains good law-which Plaintiff disputes-then the district court should have dismissed Plaintiff's claim for punitive damages in its entirety. Defendant invokes the general rule that, "[a] panel of this Court cannot overrule the decision of another panel." Salmi v. Sec'y of Health & Human Servs. , 774 F.2d 685, 689 (6th Cir. 1985). But this rule "is not absolute." Hampton v. United States , 191 F.3d 695, 701 (6th Cir. 1999). An inconsistent decision from the Supreme Court or from this Court sitting en banc "overrules the prior decision." Salmi , 774 F.2d at 689 (quoting Gist , 736 F.2d at 357-58 ). Similarly, an interpretation of Tennessee law applied by one panel of this Court is not binding on future panels where there has been "an indication from the Tennessee courts that they would have decided [the prior decision] differently." Hampton , 191 F.3d at 701 (alteration in original) (quoting Blaine Constr. Corp. v. Ins. Co. of N. Am. , 171 F.3d 343, 350-51 (6th Cir. 1999) ). In Hampton , we found that a single decision of a state court of appeals may abrogate this Court's interpretation of state law, at least in circumstances where (1) state law treats an appellate court decision as controlling in the absence of a ruling from the state supreme court; (2) there is no indication from the state supreme court that it would reach a different outcome; and (3) the state appellate court's decision is irreconcilable with our own ruling. See id. at 702 (quoting *358 Wieczorek v. Volkswagenwerk, A.G. , 731 F.2d 309, 310 (6th Cir. 1984) and citing Hicks v. Feiock , 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) ).
Our review of Tennessee caselaw reveals that the Tennessee Court of Appeals has abrogated Heil 's pronouncement that the statutory remedy for bad faith is the "exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy." 690 F.3d at 728. In Riad v. Erie Insurance Exchange , the defendant relied on Heil to argue that the plaintiff "was not entitled to damages beyond those contemplated in" the bad faith statute and so could not recover punitive damages. 436 S.W.3d 256, 275 (Tenn. Ct. App. 2013), perm. app. denied (Tenn. 2014). The appellate court rejected this contention, stating:
we reaffirm our conclusion that Plaintiff was entitled to recover any damages applicable in breach of contract actions and was not statutorily limited to the recovery of the insured loss and the bad faith penalty. Punitive damages, while generally not available in a breach of contract case, may be awarded in a breach of contract action under certain circumstances. To recover punitive damages, the trier of fact must find that a defendant acted either intentionally, fraudulently, maliciously, or recklessly. Erie does not argue that the jury was improperly instructed or that the jury failed to consider the applicable factors. Accordingly, we further conclude that the issue of punitive damages was properly submitted to the jury.
Id. at 276 (citations and internal quotation marks omitted). Most relevant for our purposes, Riad specifically quoted and disclaimed Heil 's statement that the bad faith statute is an exclusive remedy, explaining that it "ignores the Myint progeny of cases ...." Id. Indeed, Myint -which Heil never mentioned, even though Myint was decided before Heil and after the unpublished cases that Heil relied upon-is irreconcilable with Heil 's holding that the bad faith statute provides an exclusive remedy. In Myint , the Tennessee Supreme Court held exactly the opposite, concluding that "nothing in ... the bad faith statute ... limits an insured's remedies to those provided therein." Myint v. Allstate Ins. Co. , 970 S.W.2d 920, 925 (Tenn. 1998).
A published opinion of the Tennessee Court of Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction." Tenn. Sup. Ct. R. 4(G)(2) ; see Court of Appeals Precedent, Tenn. Op. Att'y Gen. No. 07-98, 2007 WL 2221359 (July 3, 2007) (explaining rule's application to published opinions of Tennessee Court of Appeals). We find no indication that the Tennessee Supreme Court disagrees with Riad , which is a published case.[3] See Tenn. Sup. Ct. R. 4(A)(1) (explaining that a "published" case is one that is published in the Southwestern Reporter). As in Hampton , then, a state appellate court in this case has abrogated this Court's interpretation of state law. See Hampton , 191 F.3d at 702 ("[T]he Michigan Court of Appeals decision in Froede [v. Holland Ladder & Mfg. Co. , 207 Mich.App. 127, 523 N.W.2d 849 (1994) ] controls *359 and, until or unless the Michigan Supreme Court decides otherwise, or in some other way casts sufficient doubt on that decision, we must abandon our interpretation of Michigan law ...."). We find that Heil is no longer good law to the extent that it held that the statutory remedy for bad faith is the "exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy." 690 F.3d at 728. The law in Tennessee now provides that the statutory remedy for bad faith is the exclusive statutory remedy for an insurer's bad faith refusal to pay on a policy, but a plaintiff may freely pursue common law claims and remedies alongside a statutory bad faith claim.[4] See Riad , 436 S.W.3d at 276 ; T.C.A. § 56-8-113. Accordingly, we reject Defendant's argument that Heil requires us to reverse the district court's ruling.
Defendant challenges this conclusion for two reasons, neither of which is persuasive. First , Defendant argues that Riad and Myint are limited to cases involving tortious or quasi-tortious acts because both cases involved claims under the Tennessee Consumer Protection Act ("TCPA"), T.C.A. §§ 47-18-101, et seq. But although both cases indeed involved TCPA and breach-of-contract claims, neither court's underlying analysis of the bad faith statute was concerned with the nature of the plaintiff's related claims. The Myint court looked to the text of the bad faith statute to conclude that "nothing in ... the bad faith statute ... limits an insured's remedies to those provided therein." 970 S.W.2d at 925. Applying this rule to the case before it, the court concluded that the plaintiff could assert a TCPA claim alongside a bad faith claim; only then did the court find that the TCPA claim failed on the merits. Id. at 926. Meanwhile, when the Riad court discussed punitive damages, it did not link the availability of such damages to the existence of any particular type of claim, such as a TCPA claim; instead, the court merely required that the "defendant acted either intentionally, fraudulently, maliciously, or recklessly." 436 S.W.3d at 276. Accordingly, Defendant is incorrect that Myint and Riad are limited to cases involving tortious or quasi-tortious acts.
Second , Defendant argues that we should apply Heil because the Tennessee General Assembly overruled the Myint line of cases with a 2011 statutory amendment, codified as T.C.A. § 56-8-113. The statute provides:
Notwithstanding any other law, title 50 [employment] and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer ... for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance .... Nothing in this section shall be construed to eliminate or otherwise affect any ... [r]emedy, cause of action, right to relief or sanction available under common law.
T.C.A. § 56-8-113. We disagree with Defendant's argument, finding that § 56-8-113 overrules Myint only in part, and only in a manner not relevant here. Under § 56-8-113, a plaintiff who asserts a bad faith claim may not recover statutory damages beyond those set forth in the bad faith statute and the title relating to employment. But § 56-8-113 leaves intact Myint 's underlying conclusion that nothing in the bad faith statute itself "limits an insured's remedies to those provided therein[,]" 970 S.W.2d at 925, and the new statute expressly disclaims any effect on the availability of common law remedies like punitive damages: "Nothing in this section shall be construed to eliminate or *360 otherwise affect any ... [r]emedy, cause of action, right to relief or sanction available under common law[.]" T.C.A. § 56-8-113. Accordingly, the new statute has no effect on Riad 's conclusion that "[p]unitive damages, while generally not available in a breach of contract case, may be awarded in a breach of contract action under certain circumstances." 436 S.W.3d at 276 (citations and internal quotation marks omitted). Defendant's argument is incorrect, and we affirm the district court's denial of Defendant's motion to dismiss Plaintiff's punitive damages claim for breach of contract.
C. Defendant's Motion for Judgment as a Matter of Law
Defendant next challenges the district court's denial of its motion for judgment as a matter of law. "We review de novo a district court's denial of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b)." Rhinehimer v. U.S. Bancorp Invs., Inc. , 787 F.3d 797, 804 (6th Cir. 2015) (citing Barnes v. City of Cincinnati , 401 F.3d 729, 736 (6th Cir. 2005) ). "In this Circuit, a federal court sitting in diversity must apply the standard for judgments as a matter of law of the state whose substantive law governs." DXS, Inc. v. Siemens Med. Sys., Inc. , 100 F.3d 462, 468 (6th Cir. 1996).
Under Tennessee law, the reviewing court must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be draw[n] from the whole evidence."
Stinson v. Crye-Leike, Inc. , 198 F. App'x 512, 515 (6th Cir. 2006) (alteration in original) (quoting Arms v. State Farm Fire & Cas. Co. , 731 F.2d 1245, 1248 (6th Cir. 1984) ). Judgment as a matter of law should be granted "only if reasonable minds could draw but one conclusion." Sauls v. Evans , 635 S.W.2d 377, 379 (Tenn. 1982).
Defendant asserts that the district court should have granted its motion for judgment as a matter of law regarding Plaintiff's claims for (1) statutory bad faith and (2) punitive damages predicated on breach of contract. We address the two issues in turn.
1. Statutory Bad Faith Claim
Tennessee's bad faith statute for insurers states the following:
The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond[.]
T.C.A. § 56-7-105(a). In order to prevail on a § 56-7-105 bad faith claim, a plaintiff must prove four elements:
(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand *361 before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.
Palmer v. Nationwide Mut. Fire Ins. Co. , 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986).
Defendant baldly asserts that it was entitled to judgment as a matter of law on Plaintiff's bad faith claim because of "the lack of evidence in support of [Plaintiff]'s bad-faith ... claim[ ]." (First Br. 34.) However, Defendant provides no support for this assertion in its principal brief, which suggests that Defendant waived this issue. See United States v. Elder , 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted) ).
In any event, Defendant's argument fails on the merits. In its reply brief, Defendant is more specific, invoking the uncertainty defense to claims of bad faith. An insurer "is entitled to rely upon available defenses and refuse payment if there [are] substantial legal grounds that the policy does not afford coverage for the alleged loss." Ginn v. Am. Heritage Life Ins. Co. , 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) (citation omitted). Thus, the statute bars the imposition of a bad faith penalty where (1) an insurer's refusal to pay is based on the insurer's uncertainty about the true beneficiary or beneficiaries of a policy, and (2) the insurer's uncertainty is supported by a substantial legal ground. See Nelms v. Tenn. Farmers Mut. Ins. Co. , 613 S.W.2d 481, 484 (Tenn. Ct. App. 1978). This holds true even if a court ultimately finds that the claimant is entitled to the proceeds of the policy. See id. A plaintiff who wishes to overcome the uncertainty defense generally "must demonstrate 'there were no legitimate grounds for disagreement about the coverage of the insurance policy.' " Fulton Bellows, LLC v. Fed. Ins. Co. , 662 F.Supp.2d 976, 996 (E.D. Tenn. 2009) (quoting Zientek v. State Farm Int'l Servs. , No. 1:05-cv-326, 2006 WL 925063, *4 (E.D. Tenn. Apr. 10, 2006) ). As always, a plaintiff may also challenge the factual support for a defendant's proffered affirmative defense. See Ass'n of Owners of Regency Park Condominiums v. Thomasson , 878 S.W.2d 560, 566 (Tenn. Ct. App. 1994) ("For an affirmative defense, which is affirmatively pleaded, the burden is on the pleader to prove same.") (quoting 11 Tenn. Jur. Evidence § 50 (1984) ).
Defendant argues that it was entitled to judgment as a matter of law because it was "concerned about the prospect of multiple liabilities" when it refused to pay Plaintiff's claim. (Third Br. 31.) This concern, Defendant argues, arose from the fact that the MDA between Plaintiff and Decedent rendered the Policy's primary beneficiary "ambiguous and uncertain." (Id. ) In support of this uncertainty, Defendant cites Holt v. Holt , 995 S.W.2d 68, 72 (Tenn. 1999), a case that Defendant characterizes as standing for the proposition that "the MDA ... vested the children with 'an equitable interest' in the policy at issue here, ... and that equitable interest created potential adversity between the children and [Plaintiff]." (Third Br. 31.)
Applying Tennessee's standard of review, however, we find that reasonable minds could reject Defendant's argument because it is not clear that Holt was the actual reason that Defendant refused to pay Plaintiff's claim.[5] Indeed, reasonable minds could instead conclude that Defendant *362 raised the uncertainty defense during litigation as a mere post hoc explanation for its conduct. When Defendant initially filed its interpleader complaint, the only potential adverse claim it described was that of Williams-not of the minor children. Defendant also did not mention in its complaint its supposed uncertainty about whether the minor children had an equitable interest in the policy. And furthermore, Defendant did not even mention Holt -the supposed basis for its uncertainty-in its motion to dismiss Plaintiff's complaint.
Prior to its motion to dismiss, Defendant's refusal to pay had no apparent basis under the law. Indeed, Defendant did not seem to understand-and certainly did not convey-what Plaintiff could do to fulfill Defendant's demand for waivers from other potential claimants. Trial witnesses testified that the guardianship process Defendant suggested for obtaining waivers was complicated, uncommon, and unnecessary. Defendant's staff admitted that it did not "meticulously review" the letter it sent to Plaintiff in which it demanded the waivers. (R. 184 at PageID #3308.) And immediately after sending the letter, the employee who wrote it closed the file on Plaintiff's complaint. Defendant's purported uncertainty is not consistent with its actions to stymie Plaintiff's claim under the Policy: Defendant initially refused to consider as proposed guardians the very same individuals whom it would later jointly move the district court to appoint to that role, Defendant repeatedly stated that it would send waiver forms but never did, and Defendant refused to consider Plaintiff's proposed alternative solution in the form of a hold harmless and indemnification agreement. In light of this evidence, a reasonable juror could conclude that Defendant did not actually refuse to pay the claim because of the legal uncertainty created by Holt .
2. Punitive Damages Claim Predicated on Breach of Contract
Defendant next argues that it was entitled to judgment as a matter of law on Plaintiff's claim for punitive damages arising from breach of contract. "Punitive damages are intended to punish the defendant for wrongful conduct and to deter others from similar conduct in the future." Clanton v. Cain-Sloan Co. , 677 S.W.2d 441, 445 (Tenn. 1984) (citing Liberty Mut. Ins. Co. v. Stevenson , 212 Tenn. 178, 368 S.W.2d 760 (1963) ); see Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc. , 492 U.S. 257, 292, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) ("Damages are designed not only as a satisfaction to the injured person, but likewise as punishment to the guilty, to deter from any such proceeding for the future and as a proof of the detestation of the jury to the action itself.") (quoting Wilkes v. Wood , Lofft. 1, 18-19, 98 Eng. Rep. 489, 498-499 (K.B. 1763) ).
Punitive damages may be awarded in "egregious" cases involving breach of contract where, in addition to showing that the defendant breached a contract, the plaintiff provides "clear and convincing proof that the defendant has acted either 'intentionally, fraudulently, maliciously, or recklessly.' " Rogers v. Louisville Land Co. , 367 S.W.3d 196, 211 n.14 (Tenn. 2012) (quoting Goff v. Elmo Greer & Sons Constr. Co. , 297 S.W.3d 175, 187 (Tenn. 2009) ). For proof to be clear and convincing, there must be "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hodges v. S.C. Toof & Co. , 833 S.W.2d 896, 901 n.3 . (Tenn. 1992). The Supreme Court of Tennessee summarizes the four levels of intent that are capable of giving rise to punitive damages for a breach of contract as follows:
*363 A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.
Id. at 901 (citations omitted).
In this case, the jury faced the question of whether Defendant's breach of contract involved egregious conduct. As previously discussed, reasonable minds could find that Defendant's uncertainty defense was merely a post hoc explanation for its refusal to pay on the Policy. Based on the following evidence, reasonable minds could go further, finding that clear and convincing evidence demonstrated that Defendant's refusal to pay was at least reckless.
Defendant was aware that its refusal to pay could lead to litigation between multiple parties; indeed, Defendant threatened to pursue such litigation itself through an interpleader action, and ultimately did so. Litigation inflicts substantial costs, both on the public and on the parties involved, and reasonable minds could conclude that Defendant consciously disregarded a risk that its threats-and eventual imposition-of litigation was unjustifiable. The jury learned that Defendant misled Plaintiff about her legal rights, incorrectly asserting that she had "obviously waived her beneficiary status" under the Policy. (R. 185 at PageID #3865.) The jury also learned that Defendant provided no basis for this bald assertion and that Defendant's systems to prevent its personnel from making false and unsupported assertions of law were inadequate. The jury further learned that when Plaintiff complained about the cost and confusion of Defendant's seemingly unjustified threat of an interpleader action, Defendant told her, "that is not our problem." (R. 182 at PageID #2799.) Indeed, Defendant told the jury that it had no policy or standard operating procedure in place to guide Plaintiff's claim to resolution without litigation, and its staff was merely dedicated to "closing" Plaintiff's complaints. (R. 184 at PageID # 3268; R. 185 at PageID #3873.)
In light of this evidence, reasonable minds could have concluded that clear and convincing evidence showed that Defendant's pursuit of litigation with Plaintiff was at least reckless. See Hodges , 833 S.W.2d at 901. We therefore affirm the district court's denial of Defendant's motion for judgment as a matter of law.
D. The Statutory Cap on Punitive Damages
On cross-appeal, Plaintiff argues that the statutory punitive damages cap, T.C.A. § 29-39-104,[6] which the district *364 court applied below, violates two provisions of the Tennessee Constitution: the individual right to a jury trial and the doctrine of separation of powers. This Court reviews de novo a district court's interpretation of state law. Salve Regina Coll. v. Russell , 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Faithful application of a state's law requires us to "anticipate how the relevant state's highest court would rule in the case," and in doing so we are "bound by controlling decisions of that court." In re Dow Corning Corp. , 419 F.3d 543, 549 (6th Cir. 2005). Where, as here, the state's appellate courts have not addressed the issue presented, "we must predict how the [state's highest] court would rule by looking to all the available data." Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc. , 249 F.3d 450, 454 (6th Cir. 2001). Federal courts should be "extremely cautious about adopting 'substantive innovation' in state law." Combs v. Int'l Ins. Co. , 354 F.3d 568, 578 (6th Cir. 2004) (citation omitted). When facing state constitutional challenges, Tennessee statutes receive "a strong presumption" of constitutionality. Lynch v. City of Jellico , 205 S.W.3d 384, 390 (Tenn. 2006) (citing Osborn v. Marr , 127 S.W.3d 737, 740-41 (Tenn. 2004) ); see also Waters v. Farr , 291 S.W.3d 873, 882 (Tenn. 2009) ("Our charge is to uphold the constitutionality of a statute wherever possible.").
Upon our assessment of Tennessee law, we find that the punitive damages bar set forth in § 29-39-104 violates the individual right to a trial by jury set forth in the Tennessee Constitution. The Declaration of Rights in the Tennessee Constitution provides that "the right of trial by jury shall remain inviolate ...." Tenn. Const. art. I, § 6. This broad language does not guarantee the right to a jury trial in every case. "Rather, it guarantees the right to trial by jury as it existed at common law under the laws and constitution of North Carolina[7] at the time of the adoption of the Tennessee Constitution of 1796." Young v. City of LaFollette , 479 S.W.3d 785, 793 (Tenn. 2015) (internal quotation marks, alteration, and citation omitted). "Among the essentials of the right to trial by jury is the right guaranteed to every litigant in jury cases to have the facts involved tried and determined by twelve jurors." State v. Bobo , 814 S.W.2d 353, 356 (Tenn. 1991).
Our review of historical evidence from Tennessee and North Carolina demonstrates that punitive damages awards were part of the right to trial by jury at the time the Tennessee Constitution was adopted. The North Carolina Supreme Court discussed the issue of punitive damages in a case it decided the year after the Tennessee Constitution was drafted, Carruthers v. Tillman , 2 N.C. (1 Hayw.) 501 (1797). Carruthers was a nuisance suit in which the defendant was accused of "overflowing of the Plaintiff's land." Id. at 501. The Court seized the opportunity to explain the types of suits in which punitive damages (therein referred to as exemplary damages) were appropriate:
[I]t is not proper, in the first instance, to give exemplary damages, but such only *365 as will compensate for actual loss, as killing the timber or overflowing a field, so as to prevent a crop being made upon it, and the like. ... [B]ut if after this the nuisance should be continued, and a new action brought, then the damages should be so exemplary as to compel an abatement of the nuisance.
Id. In Rhyne v. K-Mart Corp. , the North Carolina Supreme Court cited Carruthers as its first case discussing exemplary damages and as support for the established place of punitive damages in North Carolina common law. 358 N.C. 160, 594 S.E.2d 1, 6 (2004). Carruthers fits neatly with Wilkins v. Gilmore , an 1840 case in which the Tennessee Supreme Court held that it was "clear" that "the jury are not restrained in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages, in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass has been attended." 21 Tenn. (2 Hum.) 140, 141 (1840). Together, Carruthers and Wilkins demonstrate that North Carolina juries were awarding punitive damages at the time the Tennessee Constitution was drafted and that the practice continued uninterrupted in Tennessee thereafter. Accordingly, "the right to trial by jury as it existed at common law" in 1796 would have included the right to have the jury award punitive damages in appropriate cases.[8] Young , 479 S.W.3d at 793 (citations and internal quotation marks omitted).
Further review shows that the proper measure of punitive damages is historically a "finding of fact" within the exclusive province of the jury. In the 1839 case Boyers v. Pratt , a jury awarded the plaintiff the sizable sum of $1,460 in damages for an assault claim. 20 Tenn. (1 Hum.) 90, 90 (1839). The Tennessee Supreme Court summarized the problem of properly assessing damages as follows:
Here there was a harmless, inoffensive young man of religious habits and a non-combatant, a stranger in a strange land, degraded by the infliction of the most ignominious punishment from the hands of a wealthy, influential and respectable citizen, and without any thing approaching to adequate cause. Who can begin to estimate, in dollars and cents, what would be an adequate compensation for such an injury?
Id. at 93. The Court explained that "the peace of society ought in cases of this kind always to be looked to, and damages given to such an extent as will deter persons from the commission of such offences." Id. It therefore concluded that it could not find the damages excessive because "[t]he question is one purely of fact, and we do not think that the jury have abused their trust." Id.
One hundred years later, the Tennessee Supreme Court described another punitive damages award in similar terms. In Southeastern Greyhound Lines, Inc. v. Freels , a passenger was refused the opportunity to board a bus; the jury awarded $500 in punitive damages even though the actual damages amounted to less than two dollars. 176 Tenn. 502, 144 S.W.2d 743, 744 (1940). Based on its review of the applicable authority, the Court concluded that "the question is always for the jury, as to whether or not there was anything in the conduct of the defendant to aggravate the damages and justify the recovery therefor in addition to the actual damages suffered."
*366 Id. at 746. It quoted with approval an older case explaining that "punitory damages can not be claimed as a matter of right; but it is always a question for the jury, within its discretion, no matter what the facts are." Id. (quoting Louisville & N.R. Co. v. Satterwhite , 112 Tenn. 185, 79 S.W. 106, 112 (1904) ). Ultimately, the court concluded that it could not second-guess the jury's verdict merely because it was "unable to find strong support in this case for the allowance of additional damages." Id.
Following this line of cases from the Tennessee Supreme Court, we find that the General Assembly's attempt to cap punitive damages pursuant to T.C.A. § 29-39-104 constitutes an unconstitutional invasion of the right to trial by jury under the Tennessee Constitution. See Tenn. Const. art. I, § 6. We therefore hold that T.C.A. § 29-39-104 is unenforceable to the extent that it purports to cap punitive damage awards.
Defendant and the State ask this Court to hold otherwise for six reasons. We are not persuaded. First , these parties challenge the notion that the amount of punitive damages constitutes a "finding of fact." The Court recognizes that some jurisdictions do not consider punitive damage awards to be factual in nature. For example, the Indiana Supreme Court upheld a punitive damages cap in large part because "the jury's determination of the amount of punitive damages is not the sort of 'finding of fact' that implicates the right to jury trial under our state constitution." State v. Doe , 987 N.E.2d 1066, 1071 (Ind. 2013) (quoting Stroud v. Lints , 790 N.E.2d 440, 445 (Ind. 2003) ). And the United States Supreme Court has explained that, "[u]nlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury." Cooper Indus., Inc. v. Leatherman Tool Grp., Inc. , 532 U.S. 424, 437, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (citation omitted) (quoting Gasperini v. Ctr. for Humanities, Inc. , 518 U.S. 415, 459, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (Scalia, J., dissenting) ).
But as cases such as Wilkins , Boyers , and Southeastern Greyhound demonstrate, Tennessee law treats punitive damages differently, and it is not alone in doing so. Indeed, the United States Supreme Court acknowledged in Cooper Industries that there is a lack of uniformity on this issue, stating:
Respondent argues that our decision in Honda Motor Co. v. Oberg , 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336, (1994), rests upon the assumption that punitive damages awards are findings of fact. In that case, we held that the Oregon Constitution, which prohibits the reexamination of any "fact tried by a jury," violated due process because it did not allow for any review of the constitutionality of punitive damages awards. Respondent claims that, because we considered this provision of the Oregon Constitution to cover punitive damages, we implicitly held that punitive damages are a "fact tried by a jury." It was the Oregon Supreme Court's interpretation of that provision, however, and not our own, that compelled the treatment of punitive damages as covered. See Oberg , 512 U.S. at 427, 114 S.Ct. 2331 ; see also Van Lom v. Schneiderman , 187 Or. 89, 210 P.2d 461, 462 (1949) (construing the Oregon Constitution).
Id. at 437 n.10, 114 S.Ct. 2331 (citations omitted). The Missouri Supreme Court further demonstrated this lack of uniformity when, in a recent case, it struck down a punitive damages cap on the basis that the cap invaded the province of the jury. See *367 Lewellen v. Franklin , 441 S.W.3d 136, 145 (Mo. 2014) (en banc). In that case, the Missouri Supreme Court explained that, "[u]nder the common law as it existed at the time the Missouri Constitution was adopted, imposing punitive damages was a peculiar function of the jury." Id. at 143. Accordingly, the Court found that the punitive damages cap violated a provision of the Missouri Constitution that is materially identical to the constitutional provision at issue in this case: "the right of trial by jury as heretofore enjoyed shall remain inviolate." Mo. Const. art. 1, § 22(a). Faced with this lack of uniformity, we find that the Tennessee Supreme Court would likely apply its own rule-which is shared by states like Missouri-and would find that § 29-39-104 violates the constitutional right to a trial by jury.
Second , Defendant and the State point out that the North Carolina Supreme Court affirmed a statutory punitive damages cap in Rhyne . Given the two states' shared history, Tennessee courts have sometimes followed the lead of the North Carolina Supreme Court. For example, in Jernigan v. Jackson , the Tennessee Supreme Court considered whether individuals have a right to a trial by jury in tax cases. 704 S.W.2d 308 (Tenn. 1986). The court based its decision on a 1941 case from the North Carolina Supreme Court, explaining:
North Carolina's constitutional provision granting trial by jury in civil cases ... was in 1941 and is today in the same language as the original, and at no time in its history has the North Carolina Legislature authorized jury trials in tax cases. It follows that under the law in force and use in North Carolina in 1789 and in 1796 when Tennessee's first Constitution was adopted, jury trials in tax cases were not authorized.
Id. at 309 (citing Unemployment Comp. Comm'n v. J.M. Willis Barber & Beauty Shop , 219 N.C. 709, 15 S.E.2d 4 (1941) ). The court therefore adopted the North Carolina Supreme Court's holding that juries were not constitutionally required in tax cases. Id.
In this case, however, we are not persuaded that the Tennessee Supreme Court would follow North Carolina's lead. The basis for the North Carolina Supreme Court's decision in Rhyne was a provision of the North Carolina Constitution that protects the right to a trial by jury in "all controversies at law respecting property." See 594 S.E.2d at 10 (discussing N.C. Const. art I, § 25 ). Based on this language, the Rhyne court held that because there was "no independent right to, or 'property' interest in, an award of punitive damages," the legislature could dictate the jury's role in making such an award. See id. at 13. But the same analysis does not apply in this case because, unlike the North Carolina Constitution, the Tennessee Constitution does not contain any language limiting the right to a trial by jury to "all controversies at law respecting property." Instead, the Tennessee Constitution broadly provides that "the right of trial by jury shall remain inviolate ...." Tenn. Const. art. I, § 6.
Third , Defendant and the State argue that the punitive damages cap is constitutional because the Tennessee General Assembly has the power to abrogate or eliminate common law remedies. But this argument merely begs the question because the General Assembly's power to change the common law is subject to "constitutional limits." Lavin v. Jordon , 16 S.W.3d 362, 368 (Tenn. 2000) (citing S. Ry. Co. v. Sanders , 193 Tenn. 409, 246 S.W.2d 65, 67 (1952) ). To argue that the General Assembly may cap punitive damages based on its power to modify the common law is akin to arguing that parents may drive as fast as they wish because parents make *368 the rules. Each argument ignores a key constraint on the rulemaker's authority. In this case, of course, the preexisting constraint is the constitutional right to submit factual questions for determination by a jury.
The State's related discussion of Lavin does not persuade us otherwise. The State cites Lavin as support for the proposition that "capping punitive damages was wholly within the legislature's power." (Gov. Br. 24.) In Lavin , the Tennessee Supreme Court analyzed a statute that capped a plaintiff's recovery in cases involving "injury or damage by juvenile" to "the actual damages in an amount not to exceed ten thousand dollars ($10,000) in addition to taxable court costs." See id. at 365 (quoting T.C.A. §§ 37-10-101, 102). The plaintiffs' only argument was that the $10,000 cap did not apply to their case because it did not qualify as an "injury or damage by juvenile case" within the meaning of the statute and as dictated by binding precedent. See id. at 365, 368. In other words, the plaintiffs did not raise any constitutional challenges to the General Assembly's power to cap their recovery at $10,000. Id. The Tennessee Supreme Court described the statute as "distasteful" because $10,000 was "plainly inadequate and wholly insufficient to compensate the plaintiffs" for the loss of their son "to a senseless act of malicious violence ...." Id. at 369. Nevertheless, the Court could only resolve the question before it, which was a matter of statutory interpretation. In the case presently before us, however, there is no statutory interpretation issue; rather, the question is whether a punitive damages cap exceeds constitutional bounds. Lavin is therefore unilluminating.
Fourth , citing BMW of North America, Inc. v. Gore , 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the State argues that "Tennessee's statutory cap on punitive damages is a way of ensuring that the level of punitive damages will meet the Gore due-process standard of normalization and stabilization of awards." (Gov. Br. 17.) But Tennessee's categorical punitive damages cap of "an amount equal to the greater of: (A) Two (2) times the total amount of compensatory damages awarded; or (B) Five hundred thousand dollars ($500,000)," T.C.A. § 29-39-104(a)(5), bears no relationship to Gore 's discussion of the federal constitutional limits on punitive damages:
[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach. Once again, we return to what we said in Haslip : "We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that a general concern of reasonableness properly enters into the constitutional calculus." In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis. When the ratio is a breathtaking 500 to 1, however, the award must surely raise a suspicious judicial eyebrow.
Gore , 517 U.S. at 582-83, 116 S.Ct. 1589 (internal quotation marks, emphasis, citations, *369 and alterations omitted). We therefore reject this argument.
Fifth , the State argues that Plaintiff may not challenge the punitive damages cap because plaintiffs are never entitled to punitive damages. Indeed, Tennessee law recognizes that punitive damages are not compensatory in nature. See Concrete Spaces, Inc. v. Sender , 2 S.W.3d 901, 907-08 (Tenn. 1999). But for centuries, the right to a trial by jury in Tennessee has encompassed the right to ask a jury to determine the quantity of damages that "will deter persons from the commission of such offences." Boyers , 20 Tenn. at 93. A plaintiff's right to submit that "question ... purely of fact," id. , to a jury is not vitiated merely because the resulting award is non-compensatory. The district court's application of § 29-39-104 to reduce the jury's award of punitive damages undeniably reduced Plaintiff's recovery. Therefore, Plaintiff may challenge the validity of the punitive damages cap.
Sixth , the State argues that the punitive damages cap merely creates "legal consequences of the jury's finding on damages." (Gov. Br. 25.) In other words, § 29-39-104 does not invade the province of the jury, the State argues, because it allows the jury to make the factual finding and only then is the "trial court ... required[ ] to reduce the jury's assessment of punitive damages to comport with the law." (Id. ) Defendant similarly argues that "there is no encroachment upon the jury's fact-finding role because the jury is never aware of the cap." (Third Br. 14.) Defendant and the State imply that § 29-39-104 is merely a regulation on the process of remittitur, but these parties do not use the word "remittitur"-perhaps because the Tennessee Supreme Court has repeatedly rejected the General Assembly's attempts to regulate the exercise of remittitur. Indeed, the Tennessee Supreme Court has historically treated remittitur as a judicial power that may be influenced-but not controlled-by the General Assembly. See Borne v. Celadon Trucking Servs., Inc. , 532 S.W.3d 274, 309-10 (Tenn. 2017) (discussing history of remittitur in Tennessee); Foster v. Amcon Int'l, Inc. , 621 S.W.2d 142, 145 (Tenn. 1981) (rejecting "hard and fast rules in reviewing additurs and remittiturs"); Grant v. Louisville & N.R. Co. , 129 Tenn. 398, 165 S.W. 963, 966 (1914) (rejecting statute that barred courts from suggesting remittitur absent a finding that award was "so excessive as to indicate passion, prejudice, corruption, ... or ... caprice" on the part of the jury). The parties' attempt to recast the General Assembly's invasion of the province of the jury as akin to a regulation of remittitur therefore fails due to an additional constitutional barrier.
The right to a trial by jury, moreover, is held by a litigant, not the jury members. In this case, the jury informed Plaintiff that Defendant's conduct so violated normal expectations of proper behavior as to entitle her to $3,000,000 in damages. The jury's ignorance of a subsequent reduction in the award does not change that infringement on Plaintiff's right. Such an infringing reduction is not analogous to permissible legal consequences that impact a jury's verdict. Statutory multipliers, for example, do not undercut a jury's assessment of damages, nor do statutes that recognize the post-verdict authority of the trial court to act as both judge and thirteenth juror. For example, Tennessee's remittitur statute allows a trial court in certain circumstances to propose "remittitur instead of granting a new trial." Borne , 532 S.W.3d at 310. But allowing a trial judge, after considering the attendant circumstances and proof in a case, to offer a plaintiff the choice to avoid a new trial is a far cry from legislatively reversing a jury's *370 assessment of the amount of damages necessary to deter a defendant from future wrongful conduct.
We therefore conclude that the statutory cap on punitive damages set forth in T.C.A. § 29-39-104 violates the Tennessee Constitution.[9]
CONCLUSION
We therefore AFFIRM the district court's judgment in part, REVERSE in part, VACATE the judgment as to punitive damages, and REMAND with instructions for the district court to recalculate the award of punitive damages in accordance with the jury verdict and with this Court's holding that the statutory cap on punitive damages, T.C.A. § 29-39-104, is unconstitutional.
CONCURRING IN PART AND DISSENTING IN PART

During the pendency of this lawsuit, Plaintiff's minor child ZTL joined the suit as co-plaintiff after reaching the age of majority. Because this change was otherwise immaterial to the proceedings, we refer in this opinion to the parties as they were represented in the original complaint.

When Plaintiff filed her original claim on the Policy, Defendant insisted that Plaintiff must obtain waivers from Decedent's children before the Death Benefit could be distributed. (See, e.g. , R. 1-1 at PageID #9-10 (describing March 22, 2013, letter from Defendant to Plaintiff demanding "waivers for the minor children" and "other children").) However, Defendant's interpleader complaint did not clearly implicate the minor children, alleging only that Williams had an "actual or potential claim[ ]." (R. 4 at PageID #87 ¶ 20.) Defendant later characterized its complaint as implicating the minor children when it opposed Plaintiff's motion to dismiss the interpleader complaint. (See R. 27 at PageID #195 ("[Defendant] has at all times during the course of this litigation contended that interpleader is appropriate because [Defendant] is or may be exposed to multiple liabilities given the actual or potential claims of [Plaintiff], her minor children , and/or Ms. Williams.") (emphasis in original).)

The dissent draws a contrary conclusion, relying on language in the Tennessee Supreme Court's order refusing certification in this case. An unpublished order, however, is not binding or precedential and cannot "reverse[ ] or modif[y]" a decision in the manner contemplated by Rule 4(G)(2). When the high court disagrees with a decision, the normal procedure is to allow the case to be appealed and then reverse it. In Riad , the Tennessee Supreme Court denied permission to appeal. See Riad v. Erie Ins. Exch. , No. E2013-00288-SC-R11-CV, 2014 Tenn. LEXIS 196 (Mar. 4, 2014).

This statement of law incorporates the Court's discussion of T.C.A. § 56-8-113, infra .

Because there is reason to believe that Defendant did not rely on Holt in good faith, we need not decide whether good-faith reliance on Holt could support a refusal to pay in the future under analogous circumstances.

In relevant part, T.C.A. § 29-39-104(a)(5) provides that punitive damages are limited to the greater of either double "the total amount of compensatory damages awarded" or $500,000. The limitation "shall not be disclosed to the jury, but shall be applied by the court to any punitive damages verdict[.]" Id. § 29-39-104(a)(6). The limitation does not apply in any suit involving intent to inflict serious physical injury, intentional falsification or concealment of records, injuries or death caused by an intoxicated defendant, or felonious conduct. Id. § 29-39-104(a)(7). The parties do not argue that any of the statutory exceptions apply in this case or that the district court erred in its calculations when applying the cap.

North Carolina has special relevance because the land that became Tennessee was originally part of North Carolina, and Tennessee's Constitution draws heavily from North Carolina's. See In re Estate of Trigg , 368 S.W.3d 483, 491 (Tenn. 2012).

Tennessee's cap on punitive damages applies by its plain terms to all "civil action[s] in which punitive damages are sought[.]" T.C.A. § 29-39-104(a). In attempting to narrow the scope of the historical inquiry about the availability of punitive damages, the dissent fails to acknowledge that the challenge in this case is to a blanket statutory cap.

Because we conclude that the punitive damages cap violates the constitutional right to a trial by jury, we need not address Plaintiff's alternate argument that the cap is unconstitutional as a violation of principles of separation of powers.