IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session Heard at Knoxville

## JODI MCCLAY v. AIRPORT MANAGEMENT SERVICES, LLC

**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 3-17-cv-00705  Eli Richardson, Judge**

_____

**No. M2019-00511-SC-R23-CV**

_____


SHARON G. LEE, J., dissenting.


The Tennessee Constitution guarantees that the "right of trial by jury shall remain inviolate."[1] Tennessee Code Annotated section 29-39-102 (2012) ("the damages cap statute"), which forbids awards for noneconomic damages that exceed $750,000 (or $1,000,000 in catastrophic injury cases), is an unconstitutional invasion of the right to trial by jury. Thus, it cannot stand.

Section 29-39-102 improperly "amends" Article I, section 6 of the Tennessee Constitution to diminish the right to trial by jury. Now section 6 might as well read: "the right of trial by jury shall remain inviolate—as long as the jury, which has considered all the evidence and followed the law, awards an injured party less than $750,000 in noneconomic damages (or more than $1,000,000 when the injuries are catastrophic)." Under this legislative "amendment" to the Constitution, a jury's verdict for noneconomic damages is meaningless when the verdict exceeds the damages cap. The cap on damages is one-size-fits-all and fails to consider the extent of a party's noneconomic losses. And the injured party has to accept the reduced award of damages. Thus, the damages cap statute unconstitutionally takes away a citizen's right to trial by jury on noneconomic damages. The jury's role in a civil jury trial becomes a mere procedural formality.

Noneconomic damages include compensation for physical and emotional pain; suffering; inconvenience; disfigurement; mental anguish; emotional distress; loss of enjoyment of normal activities, benefits, and pleasures of life; and loss of physical health,

---

[1] Tenn. Const. art. XI, § 6 (1796); Tenn. Const. art. I, § 6 (1834); Tenn. Const. art. I, § 6 (1870).

well-being, or bodily functions. Tenn. Code Ann. § 29-39-101(2) (2012). Noneconomic damages are necessarily subjective and not as easily determined as economic damages, which include medical bills and lost wages. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 210–11 (Tenn. Ct. App. 2008) (citations omitted). That is why we have long considered noneconomic damages to be especially within the province of the jury. *Id.*

This Court has explained that "[a] jury has wide latitude in assessing non-economic damages. We trust jurors to use their personal experiences and sensibilities to value the intangible harms such as pain, suffering, and the inability to engage in normal activities." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 425 (Tenn. 2013). "It is not our role to second-guess the jury and to substitute our judgment . . . ." *Id.* It is the jury's role to observe the witnesses and examine the evidence to make these intangible findings—how much pain and suffering the injured person has endured, how much the quality of that person's life has been diminished, how great is the severity and permanency of the injuries—that is, what the plaintiff has lost. Thus, the constitutional right to a jury trial requires that the "community" decide the subjective element of noneconomic damages. *Johnson v. Nunis*, 383 S.W.3d 122, 136 (Tenn. Ct. App. 2012) (quoting *Smartt v. NHC Healthcare/McMinnville, LLC*, No. M2007-02026-COA-R3-CV, 2009 WL 482475, at *21 (Tenn. Ct. App. Mar. 10, 2011)). By enacting the statutory caps, the legislature has impermissibly substituted its judgment for the jury's assessment of noneconomic damages, without regard for the value a jury might place on those intangible losses.

The majority's ruling is inconsistent with this Court's previous decisions. Just two years ago in *Borne v. Celadon Trucking Services, Inc.*, we reaffirmed that the jury's role is to decide both the "*type and amount of any damages awarded to the plaintiff.*" 532 S.W.3d 274, 308 (Tenn. 2017) (citing *Meals*, 417 S.W.3d at 419–20) (emphasis added). Yet under the damages cap statute, the jury's decision about the amount of damages is an empty exercise because of the arbitrary limitation on the jury's award of noneconomic damages.

In deference to a jury's decision, this Court's past rulings recognized that a jury's verdict should be affirmed when any material evidence supported the verdict because "*if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.*" *Crabtree Masonry Co., Inc. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978) (emphasis added) (citing *City of Chattanooga v. Rogers*, 299 S.W.2d 660, 661 (Tenn. 1956); *D. M. Rose & Co. v. Snyder*, 206 S.W.2d 897, 901 (Tenn. 1947); *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975); *City of Chattanooga v. Ballew*, 354 S.W.2d 806, 808–09 (Tenn. Ct. App. 1961)). The appellate court's role is "only to determine whether there was any substantial evidence to support the verdict; *and it must be governed by the rule, safeguarding the constitutional right of trial by jury,*

*which requires us to take the strongest legitimate view of all the evidence to uphold the verdict . . . ." D. M. Rose & Co.*, 206 S.W.2d at 901 (emphasis added) (citations omitted).

In addition, a court has limited authority to add to (additur) or reduce (remittitur) a jury's award of damages. For example, an additur or remittitur cannot destroy a jury's verdict—that is, it cannot be "so large that the resulting judgment bears no meaningful relationship to the original jury verdict." *Walton ex rel. Walton v. Tullahoma HMA, LLC*, 572 S.W.3d 180, 188 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. Oct. 10, 2018); *see also Johnson*, 383 S.W.3d at 134 (quoting *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990)) ("'[A]djustments that 'totally destroy' the jury's verdict are impermissible.'"). Also, a court may not force a party to accept the increased or reduced award. Additur and remittitur are constitutionally permissible *only* because a party does not have to accept the modified award and can receive a new trial. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994) (holding that the right to a jury trial under both the Tennessee and United States Constitutions requires a defendant's consent to an additur because the trial court is "essentially disagreeing with the jury's determination of damages—which is a question of fact" required to be decided by the jury); *McCall v. Waer*, 487 S.W.2d 308, 310 (Tenn. 1972) (stating that additur does not impinge on the defendant's constitutional right to a jury trial because a defendant can refuse additur and have a new trial).

In *Borne*, this Court held that a trial court must obtain the plaintiff's consent before reducing a jury's award of damages "*[t]o avoid contravention of the right to jury trial* clauses of the federal and state constitutions." 532 S.W.3d at 309 (emphasis added) (citations omitted). Likewise, the United States Supreme Court has held that mandatory remittitur without the option of a new trial violates the plaintiff's right to trial by jury under the Seventh Amendment to the United States Constitution.[2] *Hetzel v. Prince William Cnty., Va.*, 523 U.S. 208, 211 (1998) (citations omitted) (holding that an appellate court's order that required a trial court to enter judgment for less than the jury's verdict without the option of a new trial "cannot be squared with the Seventh Amendment"). Thus, if courts cannot require a party to accept a reduction in a jury's award of damages, then it stands to reason that the legislature cannot by statutory enactment preempt a jury's award.

By usurping the jury's role in awarding noneconomic damages, the General Assembly has, in effect, amended Article I, section 6 of the Tennessee Constitution to dilute the right to trial by jury so it is no longer inviolate. But the General Assembly may only propose a constitutional amendment; it is up to the voters to amend the Constitution

---

[2] The Seventh Amendment to the United States Constitution guarantees the right to trial by jury: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII.

by ratification. Tenn. Const. art XI, § 3,[3] *Illustration Design Grp., Inc. v. McCanless*, 454 S.W.2d 115, 118 (Tenn. 1970) (citing *Cummings v. Beeler*, 223 S.W.2d 913, 924 (Tenn. 1949); *Derryberry v. State Bd. of Election Comm'rs*, 266 S.W. 102, 105 (Tenn. 1924)).[4] Under Article 11, section 3, *if* a majority of the members of the Senate and House of Representatives approves a resolution to amend the Constitution, and *if* in the next session of the General Assembly the proposed amendment is approved by two-thirds of the members of both houses, *then* the voters at the next general election may ratify the amendment. Tennessee voters, in deciding whether to amend the Constitution to cap damages awards, could consider that the purpose of the amendment is to help businesses.[5] Voters could also consider whether the damages cap is a solution looking for

---

[3] Any amendment . . . to this Constitution may be proposed in the Senate or House of Representatives, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment . . . shall be entered on their journals with the yeas and nays thereon, and referred to the general assembly then next to be chosen; and shall be published six months previous to the time of making such choice; and if in the general assembly then next chosen . . . such proposed amendment . . . shall be agreed to by two-thirds of all the members elected to each house, then it shall be the duty of the general assembly to submit such proposed amendment . . . to the people at the next general election in which a Governor is to be chosen. And if the people shall approve and ratify such amendment . . . by a majority of all the citizens of the State voting for Governor, voting in their favor, such amendment . . . shall become a part of this Constitution. When any amendment . . . to the Constitution shall be proposed in pursuance of the foregoing provisions the same shall at each of said sessions be read three times on three several days in each house.

Tenn. Const. art. XI, § 3.

[4] Perhaps to avoid constitutional problems with the damages cap statute, resolutions were introduced in 2019 in the Senate and House of Representatives to amend the Constitution to add: "The legislature has the power to enact laws limiting the amount of noneconomic and punitive damages in civil actions, and any such limit does not diminish the right of trial by jury." H.J.R. 135, 111th Gen. Assemb., 1st Reg. Sess. (Tenn. 2019); S.J.R. 176, 111th Gen. Assemb., 1st Reg. Sess. (Tenn. 2019).

[5] Statements made during the debate on noneconomic damages caps in the Tennessee House of Representatives make it clear that the sole purpose of the caps was to provide businesses with financial certainty in litigation. Representative Gerald McCormick explained that now businesses "can run their numbers and say . . . if we really mess up or one of our employees really makes a mistake, well, we're gonna pay for it, but at least we know how much we're gonna have to pay, we don't think it'll bankrupt us. We can plan for it." *Hearings on H.B. 2008 Before the H. Comm. on the Judiciary*, 107th Gen. Assemb. (Tenn. May 9, 2011). Former United States Senator Fred Thompson, testifying before the Tennessee Senate, commented, "This is a civil justice act, and all I've heard about is

a problem. In every year since 2000, the average combined amount of economic *and* noneconomic damages awarded in tort cases has been far below the amount of the statutory cap for noneconomic damages.[6] Thus, in Tennessee, we do not have a problem with "runaway juries." The damages cap applies to only a few cases each year and affects the most seriously injured individuals.

Legal analysis aside, we should not ignore the real-life consequences of the damages cap statute. For example, in 2002, six-year-old Billy Meals was involved in a car wreck. *Meals*, 417 S.W.3d at 417–18. The collision seriously injured Billy and killed his father and grandfather. *Id.* at 418. The force of the impact fractured Billy's spine. He also suffered a closed head injury and massive internal injuries. *Id.* Billy spent nearly two months in the hospital undergoing many surgeries, including removal of part of his small intestine, bowel resection, and a spinal fusion requiring the placement of rods, screws, and wires in his back, followed by nearly a month in a rehabilitation facility. *Id.* He returned to the hospital several times for treatment of infections and other complications. *Id*. Billy became a paraplegic; he would never run or walk again. *Id.* at 424. He had to have ongoing physical therapy. *Id.* His legs atrophied, and his toes became claw-like. *Id.* Billy's doctors said he would likely never father a child or have normal sexual functioning. *Id.* His doctors expected that Billy would suffer from frequent infections and

---

business" and stated that "the desire for certainty [for businesses] . . . [is] going to do grave injustice to our system." *Hearings on S.B. 1522 Before the S. Comm. on the Judiciary*, 107th Gen. Assemb. (Tenn. Apr. 19, 2011). Representative Sherry Jones opposed the statutory caps because "we're about to do some really bad things to some people that may not have much to start with *because we're trying to help businesses. . . .* I just can't vote for something that I think is going to hurt . . . average people in the long run." *Hearings on H.B. 2008 Before the H. Comm. on the Judiciary*, 107th Gen. Assemb. (Tenn. May 9, 2011) (emphasis added).

[6] Average damages awards in Tennessee that include both economic *and* noneconomic damages for fiscal years:

| | | | | | |
|---|---|---|---|---|---|
| 2000-2001 | $209,284 | 2006-2007 | $182,745 | 2012-2013 | $191,745 |
| 2001-2002 | $306,358 | 2007-2008 | $242,803 | 2013-2014 | $349,406 |
| 2002-2003 | $119,829 | 2008-2009 | $296,519 | 2014-2015 | $404,323 |
| 2003-2004 | $140,517 | 2009-2010 | $400,359 | 2015-2016 | $253,734 |
| 2004-2005 | $166,458 | 2010-2011 | $168,691 | 2016-2017 | $408,963 |
| 2005-2006 | $503,954 | 2011-2012 | $628,985 | 2017-2018 | $493,289 in healthcare liability cases and $98,350 in personal injury and wrongful death cases |

Annual Report of the Tennessee Judiciary, Fiscal Years 2000-2001 through 2017-2018.

medical problems for the rest of his life, estimated to be 55.79 years. *Id.* Billy's mother sued on his behalf. The jury awarded Billy a substantial verdict that included more than $1,000,000 in noneconomic damages. *Id.* at 417. The Court of Appeals suggested that his verdict be reduced by 70.55% or that a new trial be granted. *Id.* at 417. This Court reversed the Court of Appeals and affirmed the jury's award, finding the Court of Appeals had gone too far in its suggested reduction and that the verdict was reasonable and properly supported by the evidence. *Id.* at 428.

Had Billy's injuries occurred after October 1, 2011, when the damages cap statute went into effect, he would have received *only* $1,000,000 in noneconomic damages—a 97.5% reduction in the noneconomic damages the jury had awarded and this Court found to be reasonable. Had the verdict been reduced by 97.5%, the remittitur would have destroyed the jury's verdict and would have been impermissible. *See Myers v. Myers*, No. E2004-02135-COA-R3-CV, 2005 WL 1521952, at *5 (Tenn. Ct. App. June 27, 2005) (concluding that a 70% remittitur destroyed the jury's verdict); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1987) (holding that a 75% remittitur destroyed the jury's verdict), *overruled on other grounds by Elliott v. Cobb*, 320 S.W.3d 246 (Tenn. 2010).

Consider whether $1,000,000 (or realistically, a net recovery of less than two-thirds of the $1,000,000 after payment of lawyer fees and litigation expenses) would have been adequate and fair compensation for Billy's physical and emotional pain; suffering; inconvenience; physical impairment; disfigurement; mental anguish; emotional distress; loss of enjoyment of normal activities, benefits, and pleasures of life; and loss of physical health, well-being or bodily functions. Not at all.

We are just beginning to see the unfortunate effects the damages cap statute is having on persons injured after October 1, 2011. Courts are being forced to disregard the damages that juries—after considering the evidence presented at trial and being duly instructed on the law—have awarded to injured parties only because the injuries occurred after October 1, 2011. *See, e.g.*, *Wortham v. Kroger Ltd. P'ship I*, No. CT-003147-17, 2019 WL 1958147, at *1 (Tenn. Cir. Ct. Feb. 11, 2019) (Trial Order) (reducing noneconomic damages to injured plaintiff by 71%); *Patterson v. STHS Heart, LLC*, No. 15C1058, 2019 WL 1291942, at *1 (Tenn. Cir. Ct. Jan. 28, 2019) (Trial Order) (reducing noneconomic damages awarded by the jury by 92% in a wrongful death case); *Yebuah v. Ctr. for Urological Treatment, PLC*, No. 14C4972, 2018 WL 1901975, at *2 (Tenn. Cir. Ct. Mar. 19, 2018) (Trial Order) (reducing noneconomic damages by 83% in a case in which a medical provider left a foreign object in a patient's body for eight years after surgery); *Reid v. Hunt*, No. CT-005475-11, 2016 WL 8650047, at *1 (Tenn. Cir. Ct. Nov. 28, 2016) (Trial Order) (reducing noneconomic damages by 59% where a plaintiff lost both legs after being hit by a drunk driver).

The majority tries to justify its holding with two basic arguments, neither of which holds water. First, the majority points to the General Assembly's authority to alter common law causes of action and available remedies, citing *Lavin v. Jordon*, 16 S.W.3d 362 (Tenn. 2000). But *Lavin* does not apply. In *Lavin*, the Supreme Court considered the meaning of Tennessee Code Annotated section 37-10-103(a), not its constitutionality. Section 37-10-103(a) was a statutory remedy designed "to alleviate the harshness of the common law rule" that parents could not be held liable for their children's intentional torts. 16 S.W.3d at 366. The statute allowed lawsuits against negligent parents whose children intentionally caused personal injuries or property damage. *Id.* The statute in *Lavin*, therefore, gave tort victims something that *had not existed at common law*, so the right to trial by jury that accompanies a common law action was never implicated. The damages cap statute neither creates nor abolishes a cause of action, and it does not create a statutory remedy that did not exist at common law. Instead, the statute impermissibly takes away the right to a jury trial constitutionally vested in causes of action, such as negligence, that existed under common law.

The majority suggests that the General Assembly simply exercised its power to alter the common law by enacting the statutory cap. But the damages cap statute did not change the common law negligence cause of action. As long as the negligence cause of action is available, parties injured because of the carelessness of others have the constitutional right to have a jury decide the amount of fair and adequate compensation. The right to a jury trial is a constitutional right that cannot be eliminated by the enactment of a statute.

As the United States Court of Appeals for the Sixth Circuit noted when it held that the cap on punitive damages in Tennessee Code Annotated section 29-39-104 (2012 & Supp. 2019) violated the Tennessee Constitution,[7] the argument that the General Assembly has the authority to alter the common law "merely begs the question" because that authority has constitutional limits. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 367 (6th Cir. 2018) (citing *Lavin*, 16 S.W.3d at 368). For statutory damages caps, the authority of the General Assembly is constrained by "the constitutional right to submit factual questions for determination by a jury." *Id.* at 368. The *Lindenberg* court also rejected the applicability of *Lavin* because the only issue before the *Lavin* court was statutory construction, not the constitutionality of caps on damages. *Id.*

The majority also notes that the General Assembly has the authority to eliminate causes of action that existed under common law, pointing out statutes abolishing the torts of alienation of affection, seduction, and criminal conversation. That's true. Once a common law tort is abolished, the right to a jury trial for that cause of action ends. But here, the injured party's claim was based on negligence, and the legislature has not

---

[7] The United States Supreme Court denied certiorari, allowing the Sixth Circuit's ruling to stand. *Jackson Nat'l Life Ins. Co. v. Lindenberg*, ___ U.S. ___, 2019 WL 6689660 (Dec. 9, 2019).

abolished negligence as a cause of action. Thus, the right to trial by jury in a negligence cause of action remains (or should remain) inviolate.

Other jurisdictions hold that the legislature's authority to modify the common law does not justify taking away the constitutional right to trial by jury. *See Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 691 S.E.2d 218, 223 (Ga. 2010) (stating that although "the Legislature has authority to modify or abrogate the common law," it is not entitled "to abrogate *constitutional* rights that may inhere in common law causes of action"); *Hilburn v. Enerpipe Ltd.*, 442 P.3d 509, 516 (Kan. 2019) (quoting *Miller v. Johnson*, 289 P.3d 1098, 1140 (Kan. 2012) (Beier, J., concurring in part and dissenting in part)) (correcting course and overturning its prior ruling that statutory damage caps were constitutional, stating that although the legislature had the power to modify common law, when the people elevated the common law right to a jury trial to "enumerated constitutional status" by ratifying the state constitution, they put that right "beyond everyday legislative meddling"); *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 643 (Mo. 2012) (observing that if constitutional protections existed only until the legislature took them away, their value would be purely theoretical and "would not be rights at all but merely privileges that could be withdrawn"); *Sofie v. Fibreboard Corp.*, 771 P.2d 711, 720 (Wash. 1989) ("Because of the constitutional nature of the right to jury trial, . . . it simply cannot be removed by legislative action. . . . [The right to jury trial] remains as long as the cause of action does. Otherwise, [the constitutional jury trial guarantee] means nothing."); *see also Dimick v. Schiedt*, 293 U.S. 474, 487 (1935) ("To effectuate any change in [the constitutional right to trial by jury] is not to deal with the common law, qua common law, but to alter the Constitution. The distinction is fundamental . . . .").

The majority's second justification for upholding the statutory caps is that the jury still determines the amount of any noneconomic damages sustained by an injured party, and it is only after the jury returns its verdict that the trial court applies the cap and cuts the award. This is smoke and mirrors. A jury's award of damages that exceeds the damages cap is ignored; the jury might as well have not deliberated and made its award.

The Supreme Courts in Kansas, Alabama, Missouri, Washington, and Georgia, whose constitutions contain the same "inviolate" right to a jury trial provision as in the Tennessee Constitution, have rejected the majority's analysis and held that the cap on damages is unconstitutional. The Kansas Supreme Court in *Hilburn* observed that even if a damages cap is found to be "technically or theoretically applied as a matter of law," it intrudes on the amount of the award that the jury has found as an issue of fact. 442 P.3d at 524. This intrusion "substitutes the Legislature's nonspecific judgment for the jury's specific judgment. The people deprived the Legislature of that power when they made the right to a jury trial inviolate." *Id.*

The Alabama Supreme Court also soundly rejected the same hyper-technical argument in *Moore v. Mobile Infirmary Ass'n*, 592 So. 2d 156, 163 (Ala. 1991), noting that it was irrelevant that the right to empanel a jury still existed—the relevant inquiry was whether the jury's function was impaired. The *Moore* court determined that the caps relegated the jury's verdict to "*less* than an advisory status," which did not satisfy the constitutional mandate. *Id.* at 164.

The Missouri Supreme Court rejected the justification that the cap on damages was constitutional when the jury was nominally allowed to determine damages before the judge applied the cap because "a statutory limit on the state constitutional right to trial by jury amounts to an impermissible legislative alteration of the Constitution." *Watts*, 376 S.W.3d at 642 (citing *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 92 (Mo. 2003); *Mo. Alliance for Retired Ams. v. Dep't of Labor and Indust. Relations*, 277 S.W.3d 670, 682 (Mo. 2009)).

The Washington Supreme Court also rejected this distinction in *Sofie* when the defendants argued that the cap on damages only affected the judgment ultimately entered by the court but did not affect the jury's finding of fact. 771 P.2d at 721. In other words, the defendants argued that the jury trial right was not violated if the jury was allowed to make a factual finding on damages that would be ignored when the court issued the judgment. *Id.* The court observed that "[s]uch an argument pays lip service to the form of the jury but robs the institution of its function" and that it was impermissible to bypass a constitutional right "by allowing it to exist in form but letting it have no effect in function." *Id.* at 721, 724.

Similarly, the Georgia Supreme Court cited longstanding United States Supreme Court precedent in stating that "'[t]he right to a jury trial includes the right to have a jury determine the *amount* of . . . damages, if any, *awarded to the [plaintiff]*.'" *Nestlehutt*, 691 S.E.2d at 222 (second emphasis added) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998)). The *Nestlehutt* court found that the statutory cap on damages violated the constitutional right to a jury trial because the cap nullified the jury's findings of fact on damages and undermined the jury's basic function by requiring the trial court to reduce the jury's award to comply with the statutory cap. *Id.* at 223.

Finally, the United States Court of Appeals for the Sixth Circuit in *Lindenberg* rejected the argument that the damages cap on punitive damages did "not invade the province of the jury" because the jury made the factual finding when it assessed the plaintiff's damages, and the trial court then reduced the verdict to comply with the law. 912 F.3d at 369. The *Lindenberg* court characterized this argument as "the parties' attempt to recast the General Assembly's invasion of the province of the jury as akin to a regulation of remittitur," which this Court has repeatedly rejected. *Id.* The *Lindenberg* court emphasized that "allowing a trial judge, after considering the attendant

circumstances and proof in a case, to offer a plaintiff the choice to avoid a new trial is a far cry from legislatively reversing a jury's assessment of the amount of damages . . . ." *Id.* at 369–70.

It goes without saying that this Court does not make policy—that is for the legislature. *Smith v. Gore*, 728 S.W.2d 738, 747 (Tenn. 1987) (quoting *Cavender v. Hewitt*, 239 S.W. 767, 768 (1921)); *Estrin v. Moss*, 430 S.W.2d 345, 350 (Tenn. 1968) (citations omitted). Tennessee Code Annotated section 29-39-102 is unconstitutional without regard to the General Assembly's purpose in enacting it or the real-life fallout from it. The majority's decision that Tennessee Code Annotated section 29-39-102 is constitutional tells the citizens of Tennessee that their right to trial by jury and their right to be fairly compensated for noneconomic damages are trumped by the desire to limit the financial exposure of big corporations and insurance companies in civil negligence lawsuits. I will not join in sending this message.

I dissent.

_____
SHARON G. LEE, JUSTICE